NOT FOR CITATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOHN MANNICK,

    Plaintiff,

    v.

KAISER FOUNDATION HEALTH PLAN, INC., et al.,

    Defendants.
_____/

No. C 03-5905 PJH

**ORDER DENYING MOTION TO COMPEL ARBITRATION**

Defendants' motion for leave to amend the answer and motion for an order compelling arbitration came on for hearing before this court on December 14, 2005. Plaintiff appeared by his counsel Paul L. Rein, and defendants appeared by their counsel Rosalyn P. Mitchell. Having read the parties' papers and carefully considered their arguments, and good cause appearing, the court hereby DENIES the motions as follows and for the reasons stated at the hearing.

## INTRODUCTION

This is a disability access case, filed by plaintiff John Mannick against defendants Kaiser Foundation Health Plan, Inc., and Kaiser Foundation Hospitals (collectively, "Kaiser"). Plaintiff alleges denial of access to public facilities in violation of California Civil Code § 54.1 (access to public accommodations by physically disabled persons); California Health & Safety Code §§ 19955, et seq. (access to public accommodations by physically handicapped persons), and Title III of the Americans With Disabilities Act, 42 U.S.C. § 12181, et seq. access to public accommodations and services operated by private entities).

**United States District Court**
For the Northern District of California

## BACKGROUND

Kaiser Foundation Health Plan, Inc. ("Kaiser Health Plan") is a federally qualified health maintenance organization ("HMO"), a non-profit California public benefit corporation, and a licensed care service plan under the Knox-Keene Act, California Health & Safety Code § 1340, et seq. Kaiser Health Plan furnishes health care services to its subscribers and their dependents in accordance with the terms of written service agreements entered into between Kaiser Health Plan and its subscribers, their employers, and other organizations.

At the time of the events alleged in the complaint, Kaiser Health Plan had a medical and hospital service agreement for group coverage with the Board of Administration, California Public Employees' Retirement System ("CalPERS"). Pursuant to this "CalPERS Agreement," certain state and local governmental employees and their families were eligible to receive health and medical benefits. Defendant Kaiser Foundation Hospitals provides hospital services to Kaiser Health Plan members.

Plaintiff became a member of Kaiser Health Plan in January 2002 through his wife, an employee subscriber to the CalPERS agreement. As subscribers to the CalPERS agreement, plaintiff and his wife were sent a copy of the 2002 Kaiser Permanente Health Maintenance Organization Combined Evidence of Coverage and Disclosure Form for the Basic Plan and the Managed Medicare Health Plan (the "EOC" or "Member Agreement").

The Member Agreement contains an arbitration provision, stating, in part:

**Binding Arbitration**

BY ENROLLING IN THIS PLAN YOU ARE AGREEING TO HAVE CERTAIN DISPUTES DECIDED BY NEUTRAL BINDING ARBITRATION. BOTH HEALTH PLAN AND HEALTH PLAN MEMBERS WAIVE THEIR RIGHT TO A JURY OR COURT TRIAL FOR THESE DISPUTES.

**Scope of Arbitration**

Any dispute, except for claims within the jurisdiction of the Small Claims Court, shall be submitted to binding arbitration if:

1. The claim arises from or is related to an alleged violation of any duty incident to or arising out of or relating to this EOC or a Member Party's relationship to Kaiser Foundation Health Plan, Inc. (Health Plan), including any claim for medical or hospital malpractice, for premises liability, or relating to the coverage for, or delivery of, services or items, irrespective of the legal theories upon which

2

1  the claim is asserted; and

2  2. The claim is asserted by one or more Member Parties against one or more
3  Kaiser Permanente Parties or by one or more Kaiser Permanente Parties against one or more Member Parties.

In December 2003, plaintiff filed this action against Kaiser defendants in connection with an incident that occurred while he was a patient at Kaiser Hospital in Oakland between January 2, 2003, and January 8, 2003. Specifically, plaintiff alleges that he requires the use of a wheelchair, and that Kaiser Hospital failed to provide him with wheelchair-accessible bathrooms or shower facilities while he was a patient there. He requested injunctive relief, in the form of extensive renovations to the Kaiser Hospital, to improve disabled access, and also requested damages and attorney's fees.

Following a series of settlement conferences, the parties submitted a proposed consent decree to the court on September 16, 2005. The proposed consent decree addressed only the access issues, not the claims for damages or the attorney's fees. On September 19, 2005, Kaiser filed a notice of substitution of counsel. On September 20, 2005, the court signed the consent decree. On October 7, 2005, Kaiser's new counsel filed a motion to amend the answer to allege arbitration as an affirmative defense, and also filed a motion to compel arbitration of the claim for damages and attorney's fees.

Kaiser argues that the remaining claims for monetary damages are governed by the Member Agreement's broad arbitration provision that requires the parties to arbitrate any claims arising from, or relating to, "the coverage for, or delivery of [medical] Services, irrespective of the legal theories upon which the claim is asserted." Thus, Kaiser now seeks an order compelling arbitration.

Plaintiff contends that both Kaiser's contract with CalPERS and the Health Plan Member Agreement effectively limit arbitration to "medical malpractice" and "bad faith," and that when plaintiff's wife enrolled in the Kaiser Health Plan, she did not "clearly and unmistakably" waive the right to seek relief in federal court for antidiscrimination claims. Kaiser now seeks an order allowing amendment of the answer to allege the arbitration requirement as an affirmative defense, an order compelling arbitration of the damages claims,

3

and an order staying the action pending arbitration.

**DISCUSSION**

A.   Kaiser's Motion to Compel Arbitration

   1.   Legal Standard

The Federal Arbitration Act ("FAA") provides that written agreements to arbitrate disputes arising out of transactions involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  So long as the contract has any effect on interstate commerce, the contract "evidenc[es] a transaction involving commerce." Allied Bruce Terminix Companies, Inc. v. Dobson, 513 U.S. 265, 277 (1995).

The FAA "'creates a body of federal substantive law of arbitrability,' enforceable in both state and federal courts and pre-empting any state laws or policies to the contrary." Cohen v. Wedbush, Noble, Cooke, Inc., 841 F.2d 282, 285 (9th Cir.1988) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983)).  "[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." Moses H. Cone, 460 U.S. at 24.

The court's role under the FAA is to determine whether a valid agreement to arbitrate exists, and if so, whether the agreement encompasses the dispute at issue. Chiron Corp. v. Ortho Diagnostic Sys., 207 F.3d 1126, 1130 (9th Cir. 2000).  If the agreement encompasses the dispute at issue, then the FAA requires the court to enforce the agreement in accordance with its terms. Id.

   2.   Kaiser's Motion

Kaiser asserts that all plaintiff's claims arise out of medical services provided to him in January 2003, and that arbitration is therefore mandatory under the Member Agreement. Kaiser argues that, based on the unambiguous language of the Member Agreement, plaintiff's claims for damages fall squarely within the arbitration provision because they relate to and arise out of a) the Member Agreement, b) plaintiff's relationship with the Kaiser defendants, and c) defendants' alleged failure to deliver medical services and hospital facilities that

comply with Title III and related state laws. Kaiser contends that both the Federal Arbitration Act and the California Arbitration Act support enforcement of the arbitration provision.

In opposition, plaintiff argues that the arbitration provision in the Member Agreement is limited to the provision of medical services, and applies to claims of medical negligence and malpractice, but not to plaintiff's ADA and state civil rights claims; and that even if the Member Agreement could be interpreted as including arbitration of plaintiff's civil rights claims, Kaiser has waived any right to compel arbitration by acting inconsistently and in bad faith.

Plaintiff contends that his federal and state civil rights claims are not arbitrable under the arbitration provision in the Member Agreement, because the contract to arbitrate disputes with Kaiser does not include claims relating to the ADA or state civil rights statutes. He asserts that when his wife signed the contract of enrollment in the Kaiser Health Plan, she was provided with a document stating that "[e]nrollment in certain plans constitutes an agreement to have issues of medical malpractice decided by a neutral arbitration and waiver of any right to a jury or court trial."

In addition, he notes that the CalPERS Agreement states that the Health Plan "requires arbitration for issues such as malpractice and bad faith," and argues that the scope of arbitrable issues set forth in the CalPERS Agreement does not concern any disputes that do <u>not</u> involve malpractice or bad faith in providing medical services. He also contends that the arbitration provision makes no mention of waiving ADA or other civil rights claims, and is overly broad and lacking in specificity. He asserts that without a "clear and unmistakable" notice to plaintiff that he is waiving his rights under the ADA or other statutory civil rights, Kaiser cannot use a general reference to "any claim" arising out of or relating to the Member Agreement to deprive plaintiff of his right to a jury trial.

In reply, Kaiser argues that the agreement at issue here is not found in the enrollment form signed by plaintiff's wife, or in the contract between CalPERS and Kaiser, but rather in the Member Agreement , which contains the actual arbitration provision. Kaiser contends that the language of the arbitration provision, including the reference to any "claim" that "arises from or is related to" the Member Agreement or the Member Party's "relationship" to Kaiser,

5

"irrespective of the legal theories upon which the claim is asserted," is sufficiently broad to include plaintiff's statutory civil rights claims. Kaiser contends that there is nothing vague about the arbitration provision, and asserts that there is no requirement in the FAA that every possible legal theory under which a claim could be brought be spelled out.

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002) (quoting Steelworkers v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582 (1960)). The court finds that the motion to compel arbitration must be DENIED because the contract between the parties does not reflect an intent to submit federal and state civil rights claims to arbitration, and plaintiff therefore cannot be considered to have consented to arbitration of the ADA and state civil rights claims.

Unless the parties have clearly and unmistakably provided otherwise, the question whether they agreed to arbitrate a particular dispute is to be decided by the court, not by the arbitrator. Id. at 83-84; see also Litton Financial Printing Div. v. NLRB, 501 U.S. 190, 208 (1991). This requires the court to examine, and, to a limited extent, construe the underlying agreement. In cases subject to the FAA, courts apply ordinary state law contract principles in deciding whether the parties agreed to arbitrate a particular dispute. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995); Wagner v. Stratton Oakmont, Inc., 83 F.3d 1046, 1049 (9th Cir. 1996). State law generally requires the court to determine whether the parties objectively intended to submit the issue to arbitration. First Options, 514 U.S. at 944.

The court should determine the intent and scope of the agreement by focusing on the usual and ordinary meaning of the language used and the circumstances under which the agreement was made. Lloyd's Underwriters v. Craig & Rush, Inc., 26 Cal. App. 4th 1194, 1197-98 (1994); Cal. Civ. Code § 1644. In determining whether a particular dispute is subject to arbitration, the contract should be read as a whole. Even if broadly drafted, however, an arbitration clause does not apply to disputes unrelated to matters covered in the contract. Lawrence v. Walzer & Gabrielson, 207 Cal. App. 3d 1501, 1506 (1989); see Cal. Civ. Code § 1648 (contract "extends only to those things concerning which it appears that the parties

6

intended to contract").

For example, in Lawrence, the California Court of Appeal considered whether an attorney fee agreement requiring arbitration of "any dispute between us regarding fees, costs, or any other aspect of our attorney-client relationship" required arbitration of the client's malpractice claims against the attorney. The court held that because the agreement as a whole related to financial matters, the phrase "any other aspect of our relationship" did not obligate the client to arbitrate the malpractice claims. Id. at 1507. Similarly, in Mayhew v. Benninghoff, 53 Cal. App. 4th 1365 (1997), the court of appeal held that a client's agreement to arbitrate any "controversy arising out of or related to" the attorney's "engagement for legal matters" did not require arbitration of disputes concerning unrelated business dealings. Id. at 1370. By contrast, in Powers v. Dickson, Carlson & Campillo, 54 Cal. App. 4th 1102 (1997), the court of appeal held that an agreement to arbitrate "any dispute arising out of or related to professional services" was sufficiently broad to apply to malpractice claims as well as to fee disputes. Id. at 1112.

In the present case, Kaiser is an HMO, and the Member Agreement governs the provision of health care services by Kaiser to its members. The Member Agreement states that it "discloses the terms and conditions of [member] coverage." It provides information regarding how to use the plan, details of "rates" and "prepayment fees," a summary of "covered services,"[1] a description of the benefits offered for each of the covered services, a list of medical services that are not covered, and a description of various dispute resolution procedures and procedures regarding the continuation of coverage in the event of discontinuation of group membership.

In short, the purpose of the Member Agreement is to disclose the medical services available under the Kaiser Health Plan, and to explain to the Plan members how to utilize the

---

[1] The categories of "covered services" include hospital services; physician services; diagnostic x-rays and laboratory tests; durable medical equipment; infertility testing and treatment; ambulance services; emergency care and services; home health care; physical, occupational, and speech therapy; skilled nursing care; hospice care; blood and blood products; prescription drugs; mental health; treatment for substance abuse; chiropractic care; vision care; and hearing aids.

7

services under the Plan. As noted above, the Member Agreement states that it requires arbitration of any claim that "arises from or is related to an alleged violation of any duty incident to or arising out of or relating to" the Member Agreement or the member's "relationship to Kaiser." It then states that these claims that are required to be arbitrated include claims for "medical or hospital malpractice," claims for "premises liability," or claims "relating to the coverage for, or delivery of, [medical] services or items," regardless of the legal theories upon which the claim is asserted.

Plaintiff has asserted no claim for medical or hospital malpractice or premises liability, and no claim relating to the delivery of medical services or benefits. Rather, he seeks damages based on Kaiser's failure to provide an accessible patient drop-off area, van-accessible parking, and wheelchair accessible bathrooms and showers in the hospital rooms. As a place of "public accommodation," Kaiser is obligated to make its facilities accessible to any person with a disability. See 42 U.S.C. §§ 12182, 12181(7)(F). Plaintiff's claims do not "arise from" and are not "related to" the Member Agreement. Nor do the claims "arise from" or relate to" plaintiff's "relationship with Kaiser." In view of this finding, the court declines to reach the issue of whether Kaiser waived its right to seek arbitration.

B.  Kaiser's Motion for Leave to Amend the Answer

Kaiser seeks leave to amend the answer to assert arbitration as an affirmative defense. Kaiser argues that because there is a strong federal policy favoring arbitration, the court should therefore permit Kaiser to add arbitration as an affirmative defense. Kaiser also asserts that there is no reason not to allow Kaiser to amend the answer – arguing in particular that the proposed amendment would not prejudice plaintiff as there has been no discovery or motion practice to date on the damages claims that would be the subject of the proposed arbitration.

Generally, if not asserted in a responsive pleading, an affirmative defense is waived. Arizona v. California, 530 U.S. 392, 410 (2000). However, "arbitration and award" applies as a defense only when a dispute has already been arbitrated and an award has been obtained, which is not the situation here. See 5 Wright & Miller, Federal Practice and Procedure, Civil

8

3d § 1270 n. 14 (2004) (citing cases); see also Mapes v. Chevron USA Products Co., 237 F. Supp. 2d 739, 745 (S.D. Texas 2002). In addition, as the court has denied the motion to compel arbitration, the issue is moot.

## CONCLUSION

In accordance with the foregoing, both Kaiser's motion for an order compelling arbitration and Kaiser's motion for leave to amend the answer are DENIED.

**IT IS SO ORDERED.**

Dated: December 16, 2005

_____
PHYLLIS J. HAMILTON
United States District Judge