United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOHN MANNICK,

      Plaintiff,

  v.

KAISER FOUNDATION HEALTH PLAN,
INC., et al.,

      Defendants.
_____/

No. C 03-5905 PJH

**ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT**

     The parties' cross-motions for summary judgment came on for hearing before this

court on May 31, 2006.  Plaintiff appeared by her counsel Patricia Barbosa, Paul Rein, and

J. Gary Gwilliam.  Defendants appeared by their counsel Kari Erickson Levine and Janine

Syll Simerly.  Having read the parties' papers and carefully considered their arguments and

the relevant legal authority, and good cause appearing, the court hereby GRANTS

defendants' motion and DENIES plaintiff's motion as follows

## BACKGROUND

     This is a disability access case, alleging violations of federal and state law.  Plaintiff

John Mannick suffers from advanced-stage multiple sclerosis, and requires the use of a

wheelchair for locomotion.  His left arm and both legs are immobile.  In January 2003 he

developed a viral infection that threatened to cause him to lose the use of his right arm –

his last functioning limb.  He was hospitalized from January 2, 2003, through January 8,

1   2003, in the medical-surgical ward at Kaiser Oakland Main Hospital ("Kaiser Oakland").

2          Kaiser Oakland is one of the oldest hospitals run by defendants Kaiser Foundation

3   Health Plan, Inc. and Kaiser Foundation Hospitals ("Kaiser" or "defendants").  The low-rise

4   part of Kaiser Oakland was constructed in 1956, and the hospital tower was completed in

5   1970.  The hospital is currently licensed for 346 beds.

6          In 1994 the California Legislature passed Senate Bill 1953, an amendment to the

7   1983 Hospital Facilities Seismic Safety Act.  S.B. 1953 required all hospitals in California to

8   retrofit, rebuild, or close their general acute care inpatient hospital buildings by 2008

9   (subsequently extended to 2013) if the buildings did not meet strict new seismic safety

10  standards.  Because of the age of the Kaiser Oakland buildings, Kaiser determined that the

11  seismic upgrades would be difficult or impossible to accomplish, and would also be

12  prohibitively expensive.

13         Kaiser initially determined to build a new hospital in Emeryville and close the

14  Oakland facility.  Kaiser purchased property in Emeryville and developed architectural

15  plans, but abandoned that plan when the City of Oakland objected to Kaiser locating the

16  hospital outside of Oakland.

17         In 1996, Kaiser decided it would permanently close Kaiser Oakland hospital in three

18  years.  Kaiser began formulating plans for its hospitalized patient population to use

19  available beds in other community hospitals, and for particular populations to be transferred

20  to specific hospitals.  Kaiser entered into an agreement with Alta Bates Hospital to utilize its

21  available beds for Kaiser Oakland's women and children in-patient populations, and also

22  arranged for Kaiser Oakland's pediatric intensive care service to be transferred to

23  Children's Hospital.  Kaiser hoped to be able to transfer Kaiser Oakland's remaining

24  pediatric services and its general adult services population to Summit Hospital, but that

25  plan failed.  In 2000, Kaiser began planning associated with building a replacement hospital

26  and keeping Kaiser Oakland open until the new facility was completed.

27         As of January 2003, there were no patient rooms with wheelchair-accessible

28  bathrooms and showers in Kaiser Oakland's medical-surgical wards (5th to 10th floors).  At

United States District Court
For the Northern District of California

2

**United States District Court**
For the Northern District of California

1   some point while plaintiff was hospitalized, his catheter (which he uses 24 hours a day)

2   failed.  He wanted to take a shower, but was unable to roll his wheelchair into the shower in

3   the bathroom adjoining his room.  The nurses offered to give him a bed bath, but he

4   insisted on a shower.  Hospital aides took him to a roll-in shower located in the old 4th floor

5   maternity ward, where they helped him shower.  Plaintiff was not satisfied, however,

6   because he felt that the shower's shelf-type bench was too narrow and slippery for safety.

7       Plaintiff filed this action on December 31, 2003, alleging denial of access to public

8   facilities in violation of Title III of the Americans With Disabilities Act, 42 U.S.C. § 12181, et

9   seq. (access to public accommodations and services operated by private entities);

10  California Civil Code § 54 and § 54.1 (access to public accommodations by physically

11  disabled persons); and California Health & Safety Code §§ 19955, et seq. (access to public

12  accommodations by physically handicapped persons); and seeking injunctive relief and

13  damages.

14      Plaintiff alleges that Kaiser discriminated against him by failing to provide him with

15  an accessible patient room, and by failing to transfer him to a facility that had an accessible

16  patient room.  Plaintiff asserts that while the room he was given at Kaiser Oakland had a

17  bathroom with a toilet and a shower, neither were wheelchair-accessible, and that the

18  hospital's offer of a portable commode and bed-baths (by nurses) or a dangerous and

19  inadequate shower in the old maternity ward instead of an accessible toilet and shower was

20  discriminatory because it was based solely on his disability.  He also asserts that the

21  patient drop-off parking area was inadequately configured; and that there was inadequate

22  disabled and van-accessible parking, and inadequate paths of travel from the parking areas

23  to the hospital.

24      The case was referred to a magistrate judge for settlement.  The parties initially

25  agreed to forego all formal discovery during the settlement discussions.  Following a series

26  of six settlement conferences, the parties submitted a proposed consent decree to the

27  court on September 16, 2005.  The proposed consent decree addressed only the issue of

28  injunctive relief, not the issue of liability or the claims for damages or attorney's fees.

On September 19, 2005, Kaiser filed a notice of substitution of counsel. On September 20, 2005, the court signed the consent decree. Pursuant to the consent decree, Kaiser agreed to perform extensive construction and restructuring to provide accessible bathrooms and showers in patient rooms on each of Kaiser Oakland's five patient floors.

Specifically, Kaiser agreed to create 75 accessible parking spaces, including 10 van-accessible spaces; accessible paths of travel from parking spaces to hospital entrances; accessible hospital entrances, with signage; 3 fully accessible patient rooms, one to be completed by the end of 2005; and 3 fully accessible showers/restrooms for use by disabled patients assigned to rooms that are not otherwise fully accessible. Kaiser also agreed to evaluate the needs of disabled patients and to give them the option of transferring to another Kaiser facility for the term of their hospitalization, pending construction of the accessible rooms.

The consent decree provides that defendants "do not admit liability to the allegations in Plaintiff's Complaint filed in this action," and that "[t]he parties have reached an agreement of the claims asserted by Plaintiff for the purpose of resolving this lawsuit without the need for protracted litigation, and without the admission of any liability." Consent Decree ¶ 2. Additional relevant provisions of the consent decree are as follows:

> In order to avoid the costs, expense, and uncertainty of protracted litigation, the parties to this consent decree agree to entry of this Order to resolve all claims regarding the injunctive relief raised in the Complaint filed with the Court on December 31, 2003. Accordingly, they agree to the entry of this Order without trial or further adjudication of any issues of fact or law concerning plaintiff's claims for injunctive relief.

Consent Decree ¶ 4.

> This order shall be a full, complete, and final disposition and settlement of Plaintiff's claims against Defendants for injunctive relief that have arisen out of the subject Complaint. The parties agree that there has been no admission or finding of liability or violation of the ADA and/or California civil rights laws, and this Consent Decree should not be construed as such. Moreover, this Consent Decree cannot be used as evidence by Plaintiff to prove the damages portion of his case.

Consent Decree ¶ 5.

United States District Court

For the Northern District of California

The parties have not reached an agreement regarding Plaintiff's claims for statutory, actual, treble and personal injury damages in this matter, and for Plaintiff's claims for attorney's fees, litigation expenses and costs. These issues shall be the subject of further negotiation, litigation, or motion to the Court.

Consent Decree ¶ 7.

[E]ach of the parties to this Consent Decree . . . releases and forever discharges each other Party . . . from all claims, demands, actions, and causes of action of whatever kind or nature, presently known or unknown, arising out of or in any way connected with this Lawsuit.

Consent Decree ¶ 10.

Except for all obligations required in this Consent Decree, the parties intend that this Consent Decree apply to all conditions that existed at the subject facilities and all such further loss with respect to the Lawsuit, except those caused by the parties' subsequent to the execution of this Consent Decree. Therefore, except for all such obligations required in this Consent Decree, this Consent Decree shall apply to and cover any and all claims, demands, actions and causes of action by the parties to this Consent Decree with respect to the Lawsuit, whether the same are known, unknown or hereafter discovered or ascertained . . . .

Consent Decree ¶ 11.

On October 7, 2005, Kaiser's new counsel filed a motion to stay the action and compel arbitration. That motion was denied on December 16, 2005. On February 16, 2006, Kaiser filed another substitution of counsel.

Each side now seeks summary adjudication on liability. Kaiser seeks summary adjudication on the question whether the Kaiser Oakland was obligated to provide plaintiff with a wheelchair accessible bathroom and shower. Plaintiff seeks summary judgment on all issues of liability.

**DISCUSSION**

A.    Legal Standard

Summary judgment is appropriate when there is no genuine issue as to material facts and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Material facts are those that might affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id.

United States District Court

For the Northern District of California

1    A party seeking summary judgment bears the initial burden of informing the court of

2  the basis for its motion, and of identifying those portions of the pleadings and discovery

3  responses that demonstrate the absence of a genuine issue of material fact.  Celotex Corp.

4  v. Catrett, 477 U.S. 317, 323 (1986).  Where the moving party will have the burden of proof

5  at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other

6  than for the moving party.  On an issue where the nonmoving party will bear the burden of

7  proof at trial, the moving party can prevail merely by pointing out to the district court that

8  there is an absence of evidence to support the nonmoving party's case.  Id.  If the moving

9  party meets its initial burden, the opposing party must set forth specific facts showing that

10  there is some genuine issue for trial in order to defeat the motion.  See Fed. R. Civ. P.

11  56(e); Anderson, 477 U.S. at 250.

12    "To show the existence of a 'genuine' issue, . . . [a plaintiff] must produce at least

13  some significant probative evidence tending to support the complaint."  Smolen v. Deloitte,

14  Haskins & Sells, 921 F.2d 959, 963 (9th Cir. 1990) (quotations omitted).  The court must

15  view the evidence in the light most favorable to the non-moving party.  United States v. City

16  of Tacoma, 332 F.3d 574, 578 (9th Cir. 2003).  The court must not weigh the evidence or

17  determine the truth of the matter, but only determine whether there is a genuine issue for

18  trial.  Balint v. Carson City, 180 F.3d 1047, 1054 (9th Cir. 1999).  If the nonmoving party

19  fails to show that there is a genuine issue for trial, "the moving party is entitled to judgment

20  as a matter of law."  Celotex, 477 U.S. at 323.  Regardless of whether plaintiff or defendant

21  is the moving party, each party must "establish the existence of the elements essential to

22  [its] case, and on which [it] will bear the burden of proof at trial."  Id. at 322.

23  B.    Title III of the ADA

24    Plaintiff's ADA claims arise under Title III of the ADA, which prohibits discrimination

25  against disabled individuals in any place of public accommodation.  42 U.S.C. § 12182(a);

26  Bird v. Lewis & Clark College, 303 F.3d 1015, 1020 (9th Cir. 2002).  Liability is imposed

27  upon "any person who . . . operates a place of public accommodation" that discriminates

28  against an individual on the basis of disability.  Id.  Aside from attorney's fees, the only

**United States District Court**

For the Northern District of California

1   remedy available to a private litigant under Title III of the ADA is injunctive relief.  42 U.S.C.

2   § 12188(a)(1); see also Wander v. Kaus, 304 F.3d 856, 858 (9th Cir. 2002).

3        In enacting the ADA, Congress adopted two systems for regulating building

4   accessibility – one to apply to facilities designed and constructed for occupancy before

5   January 26, 1993, and one to apply to newly constructed or altered facilities.  See 42

6   U.S.C. § 12183(a)(1) and § 12182(b)(2)(A)(iv).  Congress also directed the Department of

7   Justice (DOJ) to issue regulations implementing Title III.  42 U.S.C. § 12186(b).  The DOJ

8   regulations are at Part 36 of 28 C.F.R.

9        Only newly-constructed or altered facilities must comply with the ADA Accessibility

10  Guidelines ("ADAAG"), which were incorporated into the DOJ regulations as Appendix A of

11  28 C.F.R. Part 36.  See 28 C.F.R. § 35.151(c).  When a facility is deemed "altered," the

12  altered portion of the facility must be made accessible "to the maximum extent feasible."

13  The infeasibility exception "applies to the occasional case where the nature of an existing

14  facility makes it virtually impossible to comply fully with applicable accessibility standards

15  . . . ." 28 C.F.R § 36.402(c).

16       The demand upon preexisting facilities that are not deemed altered is much less

17  stringent.  Existing facilities must remove architectural barriers to access only where such

18  removal is "readily achievable."  See 42 U.S.C. § 12182(b)(2)(A)(iv).  The term "readily

19  achievable" means "easily accomplished and able to be carried out without much difficulty

20  or expense."  42 U.S.C. § 12181(9); see also 28 C.F.R § 36.304(a) (preexisting facilities

21  must remove barriers to accessibility only "where such removal is readily achievable, i.e.,

22  easily accomplishable and able to be carried out without much difficulty or expense").  The

23  applicable regulations mandate that a public accommodation shall remove architectural

24  barriers where such removal is readily achievable and provide examples of steps to remove

25  barriers, such as repositioning shelves, rearranging tables, chairs, vending machines,

26  display racks, and other furniture, and widening doors.  See 28 C.F.R. §§ 36.304(a), (b).

27       In determining whether an action is readily achievable, factors to be considered

28  include –

United States District Court
For the Northern District of California

1         (A) the nature and cost of the action needed under this chapter;

2         (B) the overall financial resources of the facility or facilities
3   involved in the action; the number of persons employed at such
      facility; the effect on expenses and resources, or the impact
4         otherwise of such action upon the operation of the facility;

      (C) the overall financial resources of the covered entity; the
5   overall size of the business of a covered entity with respect to
      the number of its employees; the number, type, and location of
6   its facilities; and

7         (D) the type of operation or operations of the covered entity,
      including the composition, structure, and functions of the
8   workforce of such entity; the geographic separateness,
      administrative or fiscal relationship of the facility or facilities in
9   question to the covered entity.

10  42 U.S.C. § 12181(9)(A)-(D).

11        Where an entity can demonstrate that the removal of a barrier is not readily

12  achievable, discrimination also includes the failure to make such facilities available through

13  alternative methods if such methods are readily achievable.  42 U.S.C. § 12182(b)(2)(A)(v).

14        Although existing facilities are not required to comply with the ADAAG (unless they

15  have been altered), the ADAAG nevertheless provides guidance for determining whether

16  an existing facility contains architectural barriers.  Parr v. L&L Drive-Inn Restaurant, 96

17  F.Supp. 2d 1065, 1086 (D. Haw. 2000).  However, deviations from the ADAAG are not

18  necessarily determinative in establishing barriers to access.  See 28 C.F.R. Part 36, App.

19  A, ADAAG 2.2.

20  C.      State Law Claims

21        Plaintiff's state law claims arise under California Health & Safety Code § 19955, et

22  seq., and the California Disabled Persons Act ("CDPA"), California Civil Code §§ 54, et seq.

23  The purpose of § 19955 is to ensure that places of public accommodation constructed with

24  private funds adhere to the accessibility standards in California Government Code § 4450.

25  Government Code § 4450 requires that all buildings constructed with public funds be

26  accessible to and usable by the physically handicapped.  It also directs the State Architect

27  to develop standards for making buildings accessible to persons with disabilities.

28        Under Government Code § 4450 and Health & Safety Code §§ 19955, et seq.,

**United States District Court**
For the Northern District of California

1    affirmative conduct on the part of a public accommodation is required only for construction

2    of new facilities or for the repair or alteration of existing facilities (constructed prior to July 1,

3    1970), and then only to the area of specific alteration or repair.  Cal. Health & Safety Code

4    § 19955; Marsh v. Edwards Theatres Circuit, Inc., 64 Cal. App. 3d 881, 888 (1976),

5    superceded by statute on another ground, see Hankins v. El Torito Rest., Inc., 63 Cal. App.

6    4th 510, 521 (1998).

7        Access guidelines with which public accommodations must comply are detailed in

8    Title 24 of the California Code of Regulations.  However, Title 24 does not require that

9    facilities constructed prior to July 1, 1970, comply with its regulations unless and until the

10   building is altered, and the Title 24 requirements apply only to the area of specific

11   alteration.  Cal. Code Regs. Title 24 § 1134B.1, 2.  Moreover, the accessibility

12   requirements of Title 24 are not triggered when a place of public accommodation makes an

13   "[a]lteration solely for the purpose of removing barriers undertaken pursuant to [Title III of

14   the ADA] or the accessibility requirements of [Title 24]."  Cal. Code Regs. Title 24

15   § 1134B.2.1, Exception 3.6.

16       Under the CDPA, "[i]ndividuals with disabilities or medical conditions have the same

17   right as the general public to the full and free use of the streets, highways, sidewalks,

18   walkways, public buildings, medical facilities, including hospitals, clinics, and physicians'

19   offices, public facilities and other public places."  Cal. Civ. Code § 54(a).  Further,

20   "[i]ndividuals with disabilities shall be entitled to full and equal access, as other members of

21   the general public, to accommodations . . . places of accommodation, amusement, or

22   resort, and other places to which the general public is invited."  Cal. Civ. Code § 54.1(a)(1).

23   As of 1997, the CDPA incorporates by reference an individual's rights under the ADA.  Cal.

24   Civ. Code §§ 54(c), 54.1.  Thus, a violation of the ADA also constitutes a violation of the

25   CDPA.  See Pickern v. Best Western Timber Cove Lodge Marina Resort, 194 F.Supp. 2d

26   1128, 1130 (E.D. Cal. 2002).

27       Unlike the ADA, however, the CDPA provides for the recovery of monetary

28   damages, in the amount of three times the actual damages, but in no case less than

9

**United States District Court**
For the Northern District of California

1  $1,000.00, "for each offense."  Cal. Civ. Code § 54.3.  A plaintiff need not prove actual

2  damages in order to recover the minimum statutory amount; he only must establish that he

3  was denied equal access on a particular occasion.  Donald v. Café Royale, Inc., 218 Cal.

4  App. 3d 168, 180-81 (1990).  Moreover, there is no requirement under the CDPA that the

5  plaintiff show intentional discrimination in order to recover damages.  Organization for

6  Advancement of Minorities with Disabilities v. Brick Oven Restaurant, 406 F.Supp. 2d 1120

7  1129-30 (S.D. Cal. 2005); Donald, 218 Cal. App. 3d at 177-80.

8  D.    Defendants' Motion

9      Plaintiff asserts that Kaiser's failure to provide at least one accessible patient room,

10  at least one accessible bathroom, and at least one accessible shower as of the time he was

11  a patient at Kaiser Oakland is a violation of Title III of the ADA as a matter of law.

12  Defendants seek summary judgment on the claim that Kaiser violated the ADA and state

13  law by failing to provide plaintiff with an accessible bathroom and shower in his patient

14  room.

15      To establish a prima facie case of violation of Title III of the ADA, a plaintiff must

16  show that (1) he or she has a disability, (2) the business is a "public accommodation," and

17  (3) that the plaintiff was denied full and equal treatment because of his or her disability.

18  Parr, 96 F.Supp. 2d at 1070.  In the present case, there is no dispute that plaintiff is

19  disabled, and that Kaiser Oakland is a place of public accommodation.  The question is

20  whether plaintiff was denied equal treatment because of his disability.

21      To prevail in a claim of discrimination based on an architectural barrier, a plaintiff

22  must show in addition that (1) the existing facility presents an architectural barrier

23  prohibited under the ADA, and (2) the removal of the barrier is "readily achievable."  Id.

24  The plaintiff bears the burden of proving the existence of an architectural barrier and

25  suggesting a method of removing the barrier that is readily achievable, or "easily

26  accomplishable and able to be carried out without much difficulty or expense."  42 U.S.C.

27  § 12181(9), § 12182(b)(2)(A)(iv); see also Pickern v. Holiday Quality Foods Inc., 293 F.3d

28  1133, 1135 (9th Cir. 2002); Hubbard v. Twin Oaks Health and Rehab. Ctr., 408 F.Supp. 2d

**United States District Court**
For the Northern District of California

923, 929 (E.D. Cal. 2004).  If plaintiff satisfies this burden, the burden then shifts to the

defendants, who bear the ultimate burden of proving that the suggested method of removal

is not readily achievable.  42 U.S.C. § 12182(b)(2)(A)(v); Colorado Cross Disability

Coalition v. Hermanson Family Ltd. Partnership I, 264 F.3d 999, 1002-03 (10th Cir. 2001);

Hubbard, 408 F.Supp. 2d at 929.  The parties do not dispute the existence of architectural

barriers in Kaiser Oakland.  The question is whether the removal of those barriers was

"readily achievable."

Defendants provide a brief history of Kaiser's response to the passage of the ADA,[1]

detailing the creation of a task force to implement Kaiser's plan for ADA compliance.

Edward Denton ("Denton"), the chair of the task force and a registered architect, states in a

declaration that the planning team surveyed all of Kaiser's hospital space, and determined

that the estimated cost to remove all identified barriers in Kaiser's Northern California

facilities would be in excess of $23 million.  Kaiser then prioritized all its remediation work,

and focused on removing what it considered the "significant impediments" to accessibility.

Kaiser also met with the disabled community to obtain their input and agreement regarding

the best use of resources to remove the barriers that significantly impeded access.

According to Denton, who was employed by Kaiser Permanente in various

capacities from 1983 to 1998, Kaiser Oakland completed a number of these prioritized

projects, starting in 1995.  Kaiser employees Bettie Coles ("Coles" – a Vice President and

Area Manager responsible for the operation of Kaiser Oakland's medical center, including

the hospital tower, and three other East Bay medical centers) and Judy L. Rowe ("Rowe" –

a licensed architect responsible for all non-replacement Hospital "capital projects"[2] over

$25,000 in the East Bay) state in their declarations that Kaiser determined that the removal

of patient toilet/shower barriers in Kaiser Oakland was not readily achievable due to

---

[1]  The ADA became effective on July 26, 1992.  See Pub.L. No. 101-336, Title I, § 108, 104 Stat. 337 (1990).

[2]  According to Rowe, hospitals in California cannot undertake any construction unless they first obtain a permit from the Office of Statewide Healthcare Planning – "OSHPD."  The term "capital projects" refers to such construction projects.

1   extensive restructuring required and the substantial impact on hospital operations as a

2   result of the loss of patient beds.  Because the hospital facility was scheduled for

3   replacement by 2012, the Kaiser Facilities Services Capital Projects Group team

4   determined that the extensive restructuring required to make patient rooms accessible was

5   not readily achievable.

6        Kaiser was sued in 2000 by Disability Rights Advocates ("DRA"), regarding issues

7   relating to the height of examining tables and the accessibility of scales and other medical

8   equipment in all Kaiser hospitals.  According to Shari Samuels ("Samuels"), who worked for

9   Kaiser from 1995 through July 2005 in various capacities, and who was the ADA Program

10  Manager responsible for overseeing Kaiser's efforts to comply with the settlement

11  agreement reached in the DRA case, Kaiser worked with DRA during this period to

12  implement a realistic barrier removal plan.

13       In the present motion, defendants argue that because Kaiser Oakland was

14  constructed prior to the passage of the ADA, the question whether Kaiser had a legal

15  obligation in 2003 to provide plaintiff with an accessible bathroom necessarily requires an

16  analysis of whether there was any "trigger" (construction in or alteration to the patient

17  rooms in the medical-surgical ward) prior to plaintiff's stay in January 2003 that obligated

18  Kaiser to make bathrooms and showers wheelchair accessible, and whether the barrier

19  removal required to provide plaintiff with these accessible facilities was "readily achievable."

20  Defendants contend that the evidence shows that there was no such "trigger," and that the

21  alteration of the patient rooms to create accessible bathrooms and showers was not readily

22  achievable.

23       Defendants assert that simple alterations in one portion of a facility do not

24  automatically make the entire facility subject to the new construction standards.  They note

25  that under 28 C.F.R. § 36.402(b)(1), normal maintenance, roofing, painting, asbestos

26  removal, or changes to mechanical or electrical systems do not qualify as "alterations"

27  unless they affect the usability of the building or facility.

28       Defendants provide evidence showing that as of January 2002, the patient rooms in

United States District Court

For the Northern District of California

1    the medical-surgical wards at Kaiser Oakland had not undergone any alteration or

2    modification that triggered new construction standards under federal or state law.  Rowe,

3    who reviewed all plans dating back to the original construction date of 1970, verified that

4    none of those plans involved construction, alteration, or repair of patient rooms on the

5    medical-surgical floors, which would have triggered Kaiser's obligation to provide plaintiff

6    with an accessible toilet or shower during his January 2003 hospitalization.

7         According to Rowe, of the three construction projects completed to date in the

8    hospital tower, the first project involved conversion of an undersized labor room and

9    associated spaces on the 4th and 5th floors; the second project involved construction,

10   alteration, and structural repair of a number of patient rooms on the 4th and 5th floor of the

11   maternity ward, which began in April 2003 (after plaintiff's hospitalization) and was

12   completed in 2004; and the third project involved creating a fully accessible patient room

13   pursuant to the consent decree entered in the present litigation.

14        Defendants provide additional supporting evidence on this point from Henry Scott

15   ("Scott"), who was employed by Kaiser from 1987 until he retired in 1997, and who was the

16   Title 24 Project Inspector for Kaiser Oakland from 1992 until 1997; and from Herb Clore

17   ("Clore"), who has been employed by Kaiser as an inspector since 1985, and who was the

18   Lead Inspector of Record at Kaiser Oakland from 1989 through 1992.  Both Scott and

19   Clore state that as to the period each worked at Kaiser Oakland, there was no renovation

20   of any patient room.

21        Defendants also argue that it is plaintiff's burden to show that barrier removal is

22   readily achievable under the ADA and California law.  Defendants contend that plaintiff has

23   not met his burden, and that the undisputed evidence shows that the creation of a fully

24   accessible patient room was not readily achievable because it was too difficult and costly.

25        In her declaration, Rowe discusses in detail the work necessary to create the

26   accessible patient room that defendants agreed to construct in accordance with the

27   September 20, 2005, consent decree.  Rowe states that in order to create the extra space

28   necessary in the bathroom for an accessible shower in a patient room, it was necessary to

United States District Court

For the Northern District of California

enlarge the patient room, which required taking space from adjacent rooms. In addition, work had to be done on the ceiling of the room under construction as well as the ceiling of the room below because of the anchorage required to the necessary above-ceiling modifications, such as lights, ductwork, and HVAC. As well, the below-floor work involved plumbing modifications and noise disruption. The total cost of the work exceeded $600,000.

Defendants also argue that the removal of barriers was not readily achievable based on the impact on hospital operations occasioned by the attendant loss of licensed patient beds. Rowe explains that during the period of construction of the one completed accessible room, four licensed patient beds were rendered temporarily unusable. In addition, the remodeling permanently eliminated one patient bed. According to Coles, the loss of any hospital beds is particularly significant at Kaiser Oakland because the hospital runs a high occupancy rate. Thus, Coles asserts, any loss of beds negatively impacts the operations of the hospital.

With regard to the discrimination claim, defendants assert that they did not discriminate against plaintiff because bed baths and bedside commodes are common "facilitations" for disabled patients. They note that under 42 U.S.C. § 12182(b)(2)(A)(iv)-(v) and 28 C.F.R. § 36.305(a), where a public accommodation demonstrates that a particular barrier removal is not "readily achievable," a place of public accommodation must make its services and facilities available through alternative methods, if those methods are readily achievable. They note in addition, however, that under 42 U.S.C. § 12182(b)(2)(A)(ii)-(iii), policies and procedures need not be modified, and auxiliary aids need not be provided, if doing so would "fundamentally alter" the services or accommodations being offered or would result in an undue burden.

Defendants argue that the hospital provides bed baths as an alternative "facilitation" to barrier removal. They provide evidence showing that bed baths are a standard medical means of washing numerous patients – not only those who are disabled under the definition set forth in the ADA – and as such, are part of standard nursing practices.

14

United States District Court

For the Northern District of California

Similarly, they provide evidence showing that Kaiser provides bedside commodes as an alternative "facilitation" to many non-disabled patients, such as those who are unstable in the bathroom and will be safer if lifted onto a bedside commode.

With regard to the alleged "transfer" policy, defendants contend that they did not transfer patients from Kaiser Oakland to other hospitals because of a lack of facilities to treat those patients, as plaintiff claims. Moreover, defendants assert, that no patient, including plaintiff, has ever requested a "transfer" away from Kaiser Oakland and that patient's physician. Coles states in her declaration that patients were moved to other hospitals as part of the attempt to close Kaiser Oakland and build another hospital in lieu of completing the required seismic upgrades. Coles explains that arranging the transfer of a patient such as plaintiff to another facility would be difficult, and that any such transfer would have to be evaluated on a case-by-case basis. Defendants note that under 28 C.F.R. § 36.304 and App. B at § 36.304, it is best left to the public accommodation to determine whether any particular alternative facilitation is appropriate under the given circumstances, and argue that plaintiff was not entitled to the "facilitation" of his own choosing – such as a transfer – without any input from the hospital.

In opposition to the motion, plaintiff asserts that defendants have admittedly spent millions of dollars to alter and renovate facilities at Kaiser Oakland. Plaintiff argues that these alterations and renovations obligated Kaiser to remove barriers in the patient rooms and to provide at least one fully accessible toilet and roll-in shower for patient use. Specifically, plaintiff contends that the 1993 renovations to the 4th/5th floor maternity ward triggered the obligation to provide access for all patients – in the patient rooms and in parking, entrances, and paths of travel to the newly renovated patient rooms.

Plaintiff asserts that defendants cannot demonstrate that renovation to at least one patient room was not readily achievable under the ADA, because Kaiser has more than $25 billion in assets, and operates 30 hospitals in California. Plaintiff also claims that defendants have demonstrated conclusively that barrier removal is feasible and "readily achievable" by entering into a consent decree in which they agree to remove barriers in

1   three patient rooms and to construct fully accessible restrooms and roll-in showers.

2   Plaintiff also asserts that defendants failed to remove readily achievable "minor" barriers in

3   the patient room, by, for example, modifying door handles. thresholds, and doors.

4       Plaintiff disputes defendants' claim that providing three accessible patient rooms

5   would seriously impact hospital operations, based on the high occupancy rate at Kaiser

6   Oakland, and based on the fact that most of the rooms are three-bed rooms.  Plaintiff

7   contends that the impact could be minimized by staggering the work (presumably meaning

8   that Kaiser could work on one room at a time).

9       With regard to the discrimination claim, plaintiff argues that he was "confined to bed"

10  during his hospitalization solely as a result of defendants' discrimination-based policies.  He

11  claims that the hospital did not have a usable lift to move him from his bed to his

12  wheelchair, and that he had to get his wife to go home and get a sling so the lift would

13  work.  He argues that what defendants refer to as "standard operating procedures" – use of

14  portable commode or bed pan instead of regular toilet, and bed baths instead of access to

15  shower – are really "lesser facilities" and unequal treatment, which violate the ADA.

16      Plaintiff asserts that defendants established a policy that is discriminatory on its face

17  by classifying all mobility-disabled patients as "bed-bound" and "confined to bed" solely

18  based on their disability, for the purpose of depriving them of accessible toilets and roll-in

19  showers.  He argues that defendants' "nursing care" policy for disabled patients (use of bed

20  baths and bedside commode) was disability-based discrimination and was not based on an

21  evaluation of the plaintiff's individual needs.

22      The court finds that defendants' motion must be GRANTED.  Kaiser Oakland was a

23  "pre-existing facility," and the undisputed evidence provided by defendants shows that

24  there was no alteration or remodeling of the patient rooms that triggered an obligation to

25  provide an accessible patient room on one of the medical-surgical floors.  The 1993

26  remodeling of the 4th/5th floor labor/delivery rooms did not trigger any obligation with

27  regard to the patient rooms on the medical-surgical floors.  Moreover, even if it had, the

28  undisputed evidence shows that a renovation of a medical-surgical patient room to include

United States District Court

For the Northern District of California

1   a fully accessible bathroom was not "readily achievable," given the cost of the renovation

2   and the impact on hospital operations.

3        Defendants have established that the actual and direct cost of modifying one patient

4   room to create an accessible bathroom is in excess of $600,000, which is far from a small

5   expense.  They have also shown that the extensive work required for such modification

6   would have a significant impact on hospital operations.  The fact that defendants agreed in

7   the consent decree to do the work does not establish that defendants had any liability

8   under the ADA for not doing the work prior to plaintiff's hospitalization, as the consent

9   decree by its terms cannot be used to establish liability.

10       The court finds further, however, that it is not necessary for defendants to establish

11  that the creation of an accessible patient room was not "readily achievable," because

12  plaintiff has not met his burden of showing that barrier removal was readily achievable.

13  The amount of Kaiser's overall financial resources is only one of the factors to be

14  considered.  Moreover, the "revenue" figure cited by plaintiff is not relevant for an analysis

15  under the "readily achievable" standard because it is a total gross figure and does not

16  account for expenses such as employee salaries, capital expenditures, and hospital costs.

17       Plaintiff has failed to incorporate the other factors into the calculus, such as the

18  expense and difficulty of removing the barriers, the impact of barrier removal on Kaiser's

19  ability to provide medical care to its patients, and whether the existing facility's alterations

20  were made solely for the purpose of removing accessibility barriers.

21       Plaintiff attempts, in the declaration of his consultant Arthur Shorr filed in opposition

22  to defendants' motion, to rebut the statements of defendants' witnesses regarding the

23  impact of the barrier removal on hospital operations.  However, Shorr is an outside

24  consultant, who doesn't work at Kaiser and lacks the personal knowledge of defendants'

25  witnesses, and his effort is directed at discounting the methodology used by defendants'

26  witnesses – for example, what percentage occupancy is usual at Kaiser Oakland, and what

27  effect the loss of a certain number of patient beds would have on hospital operations –

28  rather than being positively directed at establishing that barrier removal would be "readily

United States District Court

For the Northern District of California

1   achievable."

2        In view of plaintiff's failure to meet his burden of coming forward with evidence to

3   show that creating an accessible patient room was readily achievable, defendants are

4   under no obligation to prove the affirmative defense that barrier removal is not readily

5   achievable.  See Colorado Cross, 264 F.3d at 1002-07.

6        Nor has plaintiff established that Kaiser's alternative "facilitation" is discriminatory.

7   Although plaintiff claims that it is Kaiser's policy to define all disabled individuals as

8   "confined to bed," the evidence shows that every patient that comes into Kaiser receives an

9   "interdisciplinary care plan," which involves an assessment, on admission, of a patient's

10  needs by a nurse.  Coles explains that the medical needs of every patient are determined

11  through this care plan, and that it is the medical needs of the patient that dictate whether

12  the patient will use a commode, a bed pan, or the toilet, or will be given a bed bath.

13       The evidence shows that all patients are treated equally, in that each is evaluated

14  based on his or her mobility, and may then be confined to bed based on that assessment.

15  Based on this mobility assessment, plaintiff was categorized a "total assist" patient with

16  respect to hygiene needs, and a "high injury risk" because of his limited mobility.  Because

17  of this, he was not medically permitted to use the toilet.

18       Nor was Kaiser's failure to transfer plaintiff to another facility discriminatory.  First,

19  there is no evidence that plaintiff ever requested a transfer.  Second, there is no evidence

20  that Kaiser Oakland had a "policy" of transferring patients to other facilities.  What plaintiff

21  interprets as such a policy was simply part of Kaiser's plan to move its patient populations

22  to other facilities in preparation for the demolition of Kaiser Oakland.  Third, defendants

23  have provided evidence showing that transfers, in general, are difficult and not "readily

24  achievable."

25       Plaintiffs argument regarding removal of barriers to paths of travel is outside the

26  scope of defendants' motion.

27  E.   Plaintiff's Motion

28       Plaintiff seeks summary judgment on his claim that Kaiser discriminated against him

18

1  by failing to provide him with an accessible patient room, by offering him a bed bath and a

2  portable commode instead of a fully accessible bathroom, and by failing to transfer him to

3  another facility; and his claim that Kaiser violated the ADA and state law by failing to

4  provide at least one fully accessible patient room.  This motion is DENIED, because the

5  defendants' motion on the same issues has been granted.

6       Plaintiff also contends that Kaiser violated the ADA and state law by failing to

7  provide an accessible roll-in shower in the remodeled bathroom on the 4th floor maternity

8  ward, and by failing to remove architectural barriers, in connection with parking, building

9  entrances, and paths of travel.  Plaintiff claims that Kaiser made millions of dollars' worth of

10  renovations and alterations to Kaiser Oakland between 1992 and 2002, but failed to

11  provide accessible parking, entrances, or paths of travel.

12       Plaintiff asserts, based on an analysis by his consultant Robert Johnson ("Johnson"

13  – a forensic economist), that Kaiser's overall 2003 financial resources were in excess of

14  $25 billion, with net income (after taxes and expenses) of more than $1 billion.  Based on

15  these facts regarding Kaiser's financial condition, and based on Johnson's opinion that

16  Kaiser could easily afford the renovation, plaintiff argues that the removal of the barriers

17  was "readily achievable."

18       Plaintiff also argues that the Kaiser defendants denied plaintiff "full and equal

19  access" to their public facilities in violation of Civil Code § 54.1 as a matter of law by

20  constructing and altering their public facilities without providing accessible parking,

21  entrances, and paths of travel.  He asserts that although defendants have altered and

22  renovated their medical facilities and parking lots many times since 1982, the two largest

23  patient parking garages and the parking lot for hospital discharge do not, as of the time of

24  this motion, provide the disabled with a fully compliant van-accessible parking space.

25       Plaintiff claims that evidence shows that Kaiser undertook alteration and

26  construction at Kaiser Oakland at a cost in excess of $8 million dollars between 1992 and

27  2002, but made no provisions for accessible parking and paths of travel.  Plaintiff also

28  asserts that the evidence shows that Kaiser undertook a $9 million construction upgrade

United States District Court

For the Northern District of California

1    project in several departments in the hospital and surrounding medical buildings in 1995,

2    and also made alterations or renovations to the Howe Street garage in 1995, all of which

3    plaintiff's expert claims triggered access not only to the altered areas, but to the public

4    restrooms, entrances, parking, and paths of travel to the altered areas.  Plaintiff contends

5    that Kaiser made a "business decision" not to construct the required accessibility upgrades

6    at the time of the renovation/alteration to the building, and even went so far as to mislead

7    the inspectors from the State.

8        In opposition, defendants argue that pursuant to the terms of the consent decree,

9    plaintiff waived all barrier claims (claims for injunctive relief) that were not raised in the

10   complaint or were not identified in the consent decree.[3]  Thus, defendants assert, plaintiff is

11   barred from using the consent decree to establish that any barrier removal was "readily

12   achievable," and is also barred from attempting to expand the scope of his complaint by

13   complaining about additional barriers that he did not previously raise.

14       Defendants argue that the only issue that remains in this action is liability for and

15   damages stemming from the claims actually raised in the complaint, and which are subject

16   to the remediation set forth in Attachment A to the consent decree.  Thus, with regard to

17   the removal of path-of-travel barriers, defendants argue that  the only issues before the

18   court are ones identified in the consent decree – the accessible parking spaces in the

19   Howe Street parking structures and the MacArthur/Broadway building; the policy for parking

20   fees for disabled parking; the policy re paths of travel for accessible parking spaces; and

21   the McArthur Blvd. entrance to the hospital.

22       With regard to the van accessible parking, defendants note that plaintiff's own expert

23   Peter Margen ("Margen") states in his declaration that the Howe Street garage vehicular

24   _____

25       [3]  Defendants contend that the following barriers mentioned by plaintiff in his moving
     papers, and identified by plaintiff's accessibility expert Peter Margen in his declaration, were
26   not raised in the complaint and were not identified in the consent decree as items to be
     completed: 1) alleged inaccessible lifts and examination tables in the emergency room;
27   2) alleged inaccessible patient discharge areas, parking, and path of travel issues for buildings
     other than the hospital; 3) alleged inaccessible public restrooms in the hospital; and 4) Kaiser's
28   allegedly discriminatory policy of transferring ob/gyn patients and pediatric patients to non-
     Kaiser facilities.

United States District Court

For the Northern District of California

1    entrance has a vertical clearance of 6'10" at one entrance and 7'0" at the other, while the

2    ADA requires an 8'2" clearance for vans.  Thus, defendants contend, fully compliant

3    accessible spaces cannot be created in this garage, and the barrier removal is therefore

4    not "readily achievable."[4]

5           With regard to the issue of accessible path of travel from the parking lots to the

6    hospital, defendants contend that plaintiff's argument rests on the mistaken assumption

7    that every construction or renovation project undertaken in the hospital – e.g., alterations to

8    the pharmacy, the radiology department, and various medical departments such as

9    orthopedics and cardiology – triggered path-of-travel obligations.  However, defendants

10   contend, the relevant inquiry is whether the alterations are sufficiently extensive and in a

11   location that triggers an obligation to make the external paths of travel to the hospital fully

12   accessible.

13          Defendants argue that plaintiff has failed to establish the areas of remodel for

14   several projects identified by Margen, or that all of these projects involved alterations or

15   renovations to the hospital building.  They also argue that plaintiff has not accounted for

16   alterations made solely for the purpose of removing accessibility barriers, noting that under

17   Cal. Code Regs, Title 24, 1134.B.2.1, ADA alterations are expressly excluded from

18   triggering such obligations.

19          With regard to the construction of a roll-in shower in the 4th floor maternity ward,

20   defendants argue that plaintiff has provided no evidence that the shower was not ADA-

21   compliant, and that the evidence of their expert shows that it was.

22          In reply, plaintiff argues that the evidence shows that defendants made alternations

23   to the hospital's maternity ward in 1993 that triggered an accessible shower; and that

24   defendants made alternations to the parking lot and related facilities that triggered a van-

25   accessible parking space and fully accessible paths of travel.

26          Plaintiff argues that defendants failed to remove any of the barriers in the patient

27   _____

28          [4]  There are apparently van-accessible parking spaces in parking facilities other than
     the Howe Street garage.

21

United States District Court

For the Northern District of California

1   rooms, the parking lots, the patient discharge areas, or the paths of travel, and have failed

2   to demonstrate that any particular barrier removal was "not readily achievable" under Title

3   III standards.  For example, he argues that defendants have provided no evidence that they

4   evaluated the patient rooms in the hospital and remedied "readily achievable" barriers such

5   as door hardware, thresholds, or narrow doors.  In addition, he claims that defendants'

6   agreement in the consent decree to remove the barriers demonstrates that such removal

7   was "readily achievable" under Title III standards.  He also contends that defendants

8   violated the ADA and Cal. Code of Regulations Title 24 by altering the hospital and related

9   facilities without making path-of-travel upgrades.

10       The court finds that plaintiff's motion with regard to the 4th floor shower and with

11   regard to barrier removal in parking areas and paths of travel must be DENIED.

12       First, plaintiff provides no evidence that the 4th floor shower was not fully compliant.

13   By contrast, defendants provide a declaration from their expert Marcus Hibser ("Hibser"), a

14   registered architect.  Hibser states that the as-built drawings for the remodel of the 4th/5th

15   floor maternity ward show that the shower was in accordance with ADA and Title 24

16   requirements.  He also visited the hospital and examined the shower, and states that it

17   appeared consistent with its "as-built" condition.

18       As for the claim with regard to the parking areas and paths of travel, plaintiff's

19   evidence is inconclusive.  Margen identifies numerous construction projects that occurred

20   in the hospital and its parking facilities over the years, and also identifies what he claims to

21   be barriers and paths-of-travel issues in the parking areas, patient discharge areas, and

22   hospital entrances.  Plaintiff seems to be suggesting that any one of these construction

23   projects would have been sufficient to trigger the obligation to add van-accessible parking

24   and accessible paths of travel throughout the facility.  However, he provides no authority for

25   the proposition that this requirement would have been triggered by any construction at all

26   (as opposed to construction in a specific area).

27       Health & Safety Code § 19955 states that the requirement to upgrade existing

28   facilities applies only when repair or alteration is made to such facilities, and then "[t]his

22

United States District Court
For the Northern District of California

1  requirement shall only apply to the area of specific alteration, structural repair, or addition,

2  and shall not be construed to mean that the entire building or facility is subject to this

3  [requirement]." See Marsh, 64 Cal. App. 3d at 888.  Plaintiff, however, has not established

4  that the alleged deficient paths of travel are in the same specific area as certain alterations

5  or repairs.

6       Moreover, even if we assume for the sake of argument that some of these

7  construction projects did trigger the requirement to clear paths of travel, plaintiff has not

8  established exactly what defendants were required to do to remove the barriers, and has

9  not provided evidence showing that those alternations would have been "readily

10  achievable."  It is not clear that plaintiff can establish liability for failure to remove barriers to

11  paths of travel; nevertheless, defendants not having moved on this ground, the issue

12  remains to be tried.

13       Finally, with regard to the issue of van-accessible parking, it appears from the

14  evidence provided by plaintiff that fully compliant van-accessible parking is not possible,

15  given the vehicular clearances in the two entrances into the garage.  Certainly it appears

16  not "readily achievable."  Triable issues of fact remain with respect to this part of plaintiff's

17  motion.

18  F.   Objections to Evidence

19       1.   Defendants' Objections to Plaintiff's Evidence (filed with defendants'

20            opposition)

21       Defendants object to the admission of the declarations of plaintiff's experts Robert

22  Johnson and Peter Margen.

23            a.   Declaration of Robert Johnson

24       Defendants assert that the declaration of plaintiff's expert Robert Johnson must be

25  disregarded as a whole, because Johnson's opinions go to the ultimate issue in the case –

26  whether barrier removal is "readily achievable" as a matter of law.

27       Plaintiff asked Johnson to give an opinion as to whether the providing of one

28  accessible hospital room at Kaiser Oakland as of January 2003 was "easily accomplishable

United States District Court

For the Northern District of California

1   and able to be carried out without much difficulty or expense." Johnson states in his

2   declaration that "providing a single accessible patient room at Kaiser Oakland Hospital prior

3   to January 2, 2003, would have been 'easily accomplishable and able to be carried out

4   without much difficulty or expense,' pursuant to the factors to be considered by the Court

5   under the 'readily achievable' provisions of the ADA."

6         Defendants assert that expert testimony – such as Johnson's – that consists of legal

7   conclusions cannot possibly assist the trier of fact in understanding the evidence or in

8   determining a fact in issue.  See Fed. R. Evid. 702 (expert testimony admissible only if it

9   will assist trier of fact in either understanding the evidence or determining a fact in issue).

10  Defendants assert further that Johnson's testimony is irrelevant, immaterial, speculative,

11  prejudicial, and inadmissible to prove that barrier removal was readily achievable.

12        Defendants also contend that Johnson's testimony reflects an incorrect application

13  of the applicable law, because he concludes that barrier removal is "readily achievable"

14  based solely on the amount of Kaiser's financial resources.  Defendants note that the ADA

15  requires the court to consider a number of factors, not just the financial resources of the

16  public accommodation.  Defendants also assert that Johnson has no construction

17  background, and lacks all the facts, and is therefore not even qualified to express an

18  opinion on what is "readily achievable" with regard to Kaiser Oakland.

19        In response, plaintiff argues that Johnson is a qualified and experienced economist,

20  whose qualifications defendants do not dispute.  Plaintiff claims that it is not proper to

21  object that an expert opinion goes to the ultimate issue in the case, arguing that under

22  Federal Rule of Evidence 704, "testimony in the form of an opinion or inference otherwise

23  admissible is not objectionable because it embraces an ultimate issue to be decided by the

24  trier of fact."  Plaintiff also disputes that Johnson's opinions are "legal conclusions."  Plaintiff

25  asserts that it is entirely proper for expert witnesses to give opinions that apply facts to the

26  legal standard of the case.  Plaintiff also submits that Johnson examined documents

27  produced by defendants during discovery, and that he formed his opinion based on

28  defendants' financial ability to provide accessible facilities at Kaiser Oakland.  Plaintiff

**United States District Court**
For the Northern District of California

1    claims that this is not an impermissible legal conclusion.

2        The court finds that the objection must be SUSTAINED, to the extent that Johnson's

3    opinions go to the ultimate issue of whether barrier removal is "readily achievable" as a

4    matter of law.  Plaintiff is correct that defendants have not provided a basis for a number of

5    their objections, and in asserting that Rule 704(a) provides that opinion testimony is not

6    objectionable simply because it embraces an ultimate issue to be decided by the trier of

7    fact.  However, defendants' objection is based on Johnson's opinions with regard to

8    ultimate <u>legal</u> conclusions, not ultimate factual issues.  Testimony as to ultimate issues is

9    not permitted when it consists of legal conclusions or opinions.  <u>Marx & Co., Inc. v. Diners'</u>

10   <u>Club, Inc.</u>, 550 F.2d 505, 508-10 (2d Cir. 1977) <u>cited in</u> <u>Traumann v. Southland Corp.</u>, 858

11   F.Supp. 979, 985 (N.D. Cal. 1994)).

12       Expert testimony is admissible when it will assist the trier of fact in understanding the

13   evidence or determining a disputed issue of fact.  See Fed. R. Evid. 702; <u>U.S. v. Hankey</u>,

14   203 F.3d 1160, 1168 (9th Cir. 2000).  However, "resolving doubtful questions of law is the

15   distinct and exclusive province of the trial judge."  <u>United States v. Brodie</u>, 858 F.2d 492,

16   497 (9th Cir. 1988), <u>overruled on other grounds</u>, <u>U.S. v. Morales</u>, 108 F.3d 1031 (9th Cir.

17   1997).  Accordingly, federal courts typically prohibit experts from interpreting the law for the

18   court or from advising the court about how the law should apply to the facts of a particular

19   case.  Testimony "which articulates and applies the relevant law . . . circumvents the [fact

20   finder's] decision-making function by telling it how to decide the case."  <u>Specht v. Jensen</u>,

21   853 F.2d 805 (10th Cir. 1988).

22       Here, the conclusion that barrier removal was "readily achievable" is a legal

23   conclusion for the court to reach, based on a consideration of the relevant factors.

24               b.    Declaration of Peter Margen

25       Defendants assert that the declaration of Peter Margen must be disregarded as a

26   whole because Margen's opinions go to the ultimate issue in the case – whether barrier

27   removal was "readily achievable."

28       Plaintiff asked Margen to give an opinion "as to the accessibility of certain public

25

**United States District Court**
For the Northern District of California

1    facilities at the Kaiser Hospital in Oakland . . . and to evaluate applicable state and federal

2    laws and regulations for disabled access standards in places of public accommodation."

3    Margen states in his declaration that Kaiser "triggered" ADA and state accessibility

4    requirements by conducting certain alterations, constructions, and renovations, and is

5    therefore in violation of those laws.  He also concludes that particular barrier removals are

6    "readily achievable."  Defendants assert that Margen's declaration is objectionable as a

7    whole because it constitutes impermissible legal conclusion with regard to whether barrier

8    removal was "readily achievable" (as discussed with reference to the Johnson Declaration).

9         Defendants also argue that Margen's testimony with regard to whether Kaiser

10   Oakland had any accessible patient rooms is based on inaccurate facts and constitutes

11   impermissible legal opinion, and also is not based on personal knowledge as Margen did

12   not review all the patient rooms; arguing that Margen's testimony that bed pans and bed

13   baths are not an accommodation that complies with the purposes and intent of the ADA is

14   an impermissible legal opinion; arguing that Margen's statements that Kaiser undertook

15   renovations worth millions of dollars without providing required disabled access, that

16   required corrections to the parking would not have been "too expensive or difficult for a

17   party that has the financial resources of defendants," and that "all" the construction projects

18   at Kaiser Oakland would have triggered path-of-travel upgrades, constitute impermissible

19   legal opinion, are based on inaccurate facts, lack foundation, and are irrelevant.

20        Defendants object further to Exhibits 2, 3, and 5-8 to the Margen Declaration,

21   arguing that they are not admissible.  They assert that Exhibit 2 (site map of Kaiser

22   Oakland complex) has not been properly authenticated; that Exhibit 3 (Margen's expert

23   report) contains impermissible legal opinion and is speculative; that Exhibit 5 (construction

24   project authorization forms) contains documents that are not relevant to the issues raised in

25   the motion); that Exhibit 6 (unsigned internal memorandum re 1995 renovation project) is

26   not relevant to any issue raised in plaintiff's motion; that Exhibit 7 (certificate of substantial

27   completion) has not been properly authenticated; and that Exhibit 8 (architect's plan for

28   2003 renovation of maternity ward) is not relevant to any issue raised in plaintiff's motion.

**United States District Court**
For the Northern District of California

1    In response, plaintiff makes the same arguments as he did with regard to the

2    Johnson Declaration – that Margen is a qualified expert, and that it is permissible for an

3    expert to render an opinion that goes to the ultimate issue in a case.

4    With regard to the objections to the exhibits, plaintiff responds that the documents

5    were provided by defendants in discovery, and were authenticated by the declaration of

6    plaintiff's counsel Julie McLean, who states that plaintiff obtained them in discovery.

7    Plaintiff contends that these objections should be overruled because defendants did not

8    object to the McLean Declaration.

9    For the reasons stated above with regard to Johnson, defendants' objection to

10    Margen's conclusion that the barrier removal was "readily achievable" is SUSTAINED, as is

11    the objection to the statement that bed pans and bed baths are not an accommodation that

12    complies with the purposes and intent of the ADA, and the objection to the statements that

13    required corrections to the parking would not have been "too expensive or difficult for a

14    party that has the financial resources of defendants," and that "all" the construction projects

15    at Kaiser Oakland would have triggered path-of-travel upgrades.  The objections to Exhibits

16    5, 6, and 8 are SUSTAINED, as plaintiff has not responded to those objections.  The

17    objections to Exhibits 2 and 7 are OVERRULED.  See Maljack Prods., Inc. v. GoodTimes

18    Home Video Corp., 81 F.3d 881, 889 n.12 (9th Cir. 1996) (documents produced by a party

19    in discovery deemed authentic when offered by a party-opponent), cited in Orr v. Bank of

20    America, 285 F.3d 764, 777 n.20 (9th Cir. 2002).

21    2.    Plaintiff's Motions to Exclude Defendants' Witnesses and Objections to

22    Evidence (filed with plaintiff's opposition)

23    a.    Plaintiff's Motion to Exclude Witnesses

24    Plaintiff claims that defendants originally disclosed six witnesses on April 22 , 2004,

25    and that they did not supplement the disclosure until April 18, 2006, when they added 40

26    previously undisclosed witnesses.  Plaintiff also claims that defendants did not allow access

27    to two storage facilities full of thousands of crucial documents until April 20 and 21, 2006.

28    Plaintiff claims that defendants had previously refused to produce these documents,

27

**United States District Court**

For the Northern District of California

1   claiming that the documents were irrelevant or that production would be overly

2   burdensome.

3         Plaintiff asserts that these last-minute disclosures have prejudiced his ability to

4   prepare his own summary judgment motion or to oppose defendants' motion.  Plaintiff

5   seeks an order excluding all 40 newly-disclosed witnesses from testifying in connection

6   with motions or at trial, and striking all declarations by those witnesses filed in connection

7   with these motions for summary judgment.  Plaintiff also seeks an order excluding any

8   "previously withheld" documents.

9         As stated at the hearing, a motion to exclude evidence as a discovery sanction must

10   be brought within the applicable time limits as a separate motion, as provided under

11   Federal Rule of Civil Procedure 37 and the Civil Local Rules of this court.  Because

12   plaintiff's motion does not comply with those rules, the motion is DENIED.

13               b.   Plaintiff's Objections to Evidence

14         Plaintiff argues that portions of the declarations of Bettie Coles, Judy Rowe, Edward

15   Denton, Herb Clore, Henry Scott, Shari Samuels, and Nitasha Lal, all of which were filed in

16   support of defendants' motion, are inadmissible because they constitute "incompetent

17   expert testimony."  The objections are OVERRULED.  The court finds that the testimony of

18   each of these witnesses was made on personal knowledge.

19         For example, Coles, as Vice President of Operations for Kaiser Oakland, has

20   personal knowledge of the date the buildings were constructed, personal knowledge of the

21   subsequent alterations to and remodeling of the buildings, and personal knowledge of

22   Kaiser Oakland's efforts to comply with the ADA and Title 24.  Similarly, Rowe, by virtue of

23   her managerial position, has personal knowledge of the duties of the people who reported

24   to her, personal knowledge of construction projects completed in compliance with the ADA,

25   and personal knowledge of the process of remodeling a single patient room to install an

26   accessible bathroom.  Both state based on their own personal knowledge that there was no

27   construction in or alteration to any of the patient rooms in the medical-surgical wards during

28   the time they worked at Kaiser Oakland.  Samuels also testifies based on personal

United States District Court

For the Northern District of California

1    knowledge, and authenticates documents that were produced to plaintiff.

2         3.    Plaintiff's Objections to Defendants' Use of Previously Undisclosed Witnesses

3              and Evidence and Objection to Evidence (filed with plaintiff's reply)

4              a.    Plaintiff's Objections to Use of Previously Undisclosed Witnesses and

5                   Evidence

6    This is essentially a repeat of the plaintiff's motion to exclude witnesses, and is

7    OVERRULED for the reasons stated above.

8              b.    Plaintiff's Objections to Evidence Raised by Defendants in their

9                   Opposition to Plaintiff's Motion

10   Plaintiff argues that the declarations of defendants' witnesses are filled with

11   inadmissible evidence and should be stricken by the court.

12                  i.    Declaration of Bettie Coles in Support of Defendants' Opposition

13   Plaintiff objects to the Coles declaration filed in support of defendants' opposition to

14   plaintiff's motion.  He again argues that Coles is being offered as a lay witness, not an

15   expert, and that the declaration should be stricken as "incompetent expert testimony," and

16   as lacking in personal knowledge.  For the reasons stated above, this objection is

17   OVERRULED.

18                  ii.   Declaration of Kari Levine in Opposition to Plaintiff's Motion

19   Plaintiff contends that ¶¶ 1-9 of the declaration of defendants' counsel Kari Levine –

20   this is the Levine opposition declaration – should be stricken because it contains

21   inappropriate legal argument regarding the substance of the pleadings in the case, the

22   settlement agreement, and the legal significance of such documents.  Plaintiff does not

23   provide any specifics.

24   Plaintiff argues that ¶¶ 10-38 of the Levine declaration contains self-serving,

25   inaccurate, and inadmissible hearsay testimony regarding the history of discovery in this

26   case.  Plaintiff claims that "Ms. Levine's 'history' is incomplete and misleading," but

27   provides no specifics, except to complain that Levine included her own letters to plaintiff's

28   counsel, but not plaintiff's counsel's response.  Plaintiff also asserts that as Levine and the

29

United States District Court

For the Northern District of California

1   Seyfarth firm only began representing defendants in February 2006, she can have no

2   personal knowledge regarding any discovery events prior to that time.

3          These objections are OVERRULED.  Plaintiff has provided no specifics regarding

4   how the declaration is inaccurate or misleading.

5                          iii.      Exh. T to the Levine Declaration in Opposition to Plaintiff's

6                                    Motion

7          Plaintiff objects to the admission of Exh. T to the Levine declaration.  This is

8   plaintiff's second objection to the same Bettie Coles declaration filed in support of

9   defendants' motion, discussed above.  This objection is OVERRULED.

10         4.      Plaintiff's Objections to Defendants' Use of New Arguments and New

11                 Evidence in Support of Defendants' Reply on Defendants' Summary

12                 Judgment Motion (filed one week after the filing of the reply briefs)

13         In what amounts to a surreply, filed without leave of court, plaintiff argues that

14  defendants introduced a new theory in their reply – that there was a fully accessible shower

15  built in the 4th floor labor/delivery area when those rooms were remodeled in 1993, and

16  that the shower to which plaintiff was taken was therefore fully accessible.  Plaintiff claims

17  that previously defendants have always argued that they had no legal obligation to provide

18  an accessible shower to plaintiff and that they instead offered him a bed bath, and that

19  even though the shower they took him to was not accessible, there was no ADA violation.

20         Plaintiff asserts that now, with the declaration of defendants' expert Marcus Hibser

21  filed with defendants' reply, defendants have come up with this entirely new theory, which

22  is that the maternity floor shower was accessible.  Plaintiff argues that defendants should

23  not be permitted to raise this new theory in a reply brief, and also asserts that Hibser's

24  opinion is not reliable based on his review of the "as-built" plans, not on any viewing of the

25  shower itself.  Thus, according to plaintiff, because Hibser never saw the shower, he

26  cannot honestly say, as he does in his declaration, that the roll-in shower constructed in

27  1993 "is the exact roll-in shower in which [p]laintiff was showered during his hospitalization

28  stay."  Plaintiff also asserts that the plans Hibser reviewed show the existing conditions

prior to the renovations, and then show the proposed changes, but do not show what was actually built.

In addition, plaintiff claims that when his counsel requested the opportunity to examine the shower with plaintiff's expert in December 2003, they were told that the whole area was being remodeled again, and that the shower had been "gutted" and no longer existed in its previous state. Plaintiff asserts that defendants' reply brief states that the same shower has been in existence since 1993, and that the Hibser declaration "suggests" the same, and argues that it is not fair that his counsel were denied the opportunity to see the shower.

As stated at the hearing, this "objection" constitutes an improper argument raised in response to a reply brief without leave of court. Accordingly, the objection is OVERRULED, and the surreply is stricken, as is defendants' response to the surreply.

**IT IS SO ORDERED.**

Dated: June 9, 2006

_____
PHYLLIS J. HAMILTON
United States District Judge