United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOHN MANNICK,

    Plaintiff,

    v.

KAISER FOUNDATION HEALTH PLAN, INC., et al.,

    Defendants.

_____/

No. C 03-5905 PJH

**ORDER RE PLAINTIFF'S MOTIONS FOR ATTORNEY'S FEES**

    Before the court are plaintiff's motions for attorney's fees and costs, for work performed by The Law Offices of Paul L. Rein and the law firm of Gwilliam, Ivary, Chiosso, Cavalli, & Brewer.  Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS the motions in part and DENIES them in part.

**BACKGROUND**

    This is a case brought under Title III of the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12181, et seq.; the California Disabled Persons Act, California Civil Code §§ 54, et seq.; and California Health & Safety Code §§ 19955, et seq.

    The events that gave rise to this suit occurred in January 2003.  Plaintiff John Mannick, who suffers from MS and uses a motorized wheelchair, has functional use of only

his right upper extremity. On January 3, 2003, when a viral infection threatened the loss of his last remaining functioning limb, plaintiff was taken to the Emergency Room at Kaiser Oakland Hospital. He was hospitalized in Room 605 of the medical/surgical ward until his discharge on January 8, 2003.

During this period of hospitalization, plaintiff encountered a number of disability access violations – the door handles in his room were not usable by a person with limited function, the hospital's Hoyer lift (used for lifting a wheel-chair bound patient from his/her chair into the hospital bed) was missing the sling, and the bathroom and shower were not accessible to a person in a wheelchair.

On the second day of his hospitalization, January 4, 2003, plaintiff's catheter failed, causing him and his wheelchair to be soaked in urine. Plaintiff refused a bed bath by the nurse, and insisted that he be given a shower in the bathroom adjacent to his room (which was not possible).

Following his release from the hospital, plaintiff contacted Kaiser about the disability access violations, and a number of Kaiser personnel met with plaintiff to discuss his complaints. During a meeting on February 19, 2003, Kaiser personnel described the ADA access measures Kaiser had initiated and was in the process of undertaking, independent of plaintiff's stay in Kaiser Oakland. Kaiser committed to renovate a 6th floor patient room so that it would be wheelchair accessible. Kaiser believed it had responded to plaintiff's complaints, and proceeded to develop plans for the renovation, submitted the plans to OSHPD for approval in June 2003, and resubmitted them with modifications in August 2003.

On February 3, 2003, however, according to timesheets submitted by the Rein firm, Ms. Barbossa first interviewed plaintiff regarding possible representation, and the Rein attorneys engaged in further conversations with plaintiff during the period from February through early September. The Rein firm's timesheets for the period beginning February 28, 2003, contain numerous references to the "scope of complaint" and the "scope of issues for complaint."

2

Nevertheless, in early September, Mr. Rein sent Kaiser a letter in which he advised Kaiser of his representation of plaintiff, and asked whether Kaiser was willing to "work cooperatively to settle [the] case <u>without</u> the necessity of a lawsuit." He stated further,

> With regard to hospital room No. 605, we would appreciate an opportunity for a <u>cooperative inspection</u> to be participated in by Mr. Mannick's counsel and his expert/access consultant. If we can agree to this, we will withhold filing a lawsuit and seeking immediate court-ordered injunctive relief. After making the inspection we will seek agreement as to correcting the access deficiencies . . . . We would then be willing to work toward resolving all claims for damages and plaintiff's appropriate attorney fees and costs to that date.

On September 23, 2003, Malcolm Trifon, Kaiser's in-house counsel, responded to Mr. Rein's letter, stating, "We have been informed that the issues raised by Mr. Mannick were addressed by him some time ago." He added, "We are in the process of obtaining the details and will contact you as soon as we have completed our review."

On October 21, 2003, Mr. Trifon again wrote Mr. Rein, stating that Kaiser's investigation "confirmed that the issues raised in your letter were fully addressed by Mr. Mannick some months ago and resolved, to what we thought, was his full satisfaction at that time." Mr. Trifon explained Kaiser's efforts with regard to ADA modifications and plans generally, and stated that he did not see what an inspection of Room 605 would accomplish. He included a set of plans for the sixth floor room for Rein to provide to the access consultant.

On October 29, 2003, Mr. Rein wrote back asking for a list of all changes that had occurred since plaintiff's hospitalization, stating that "[w]e still need to inspect Room 605 immediately," and asking Mr. Trifon to call to schedule the inspection. On November 19, 2003, Julie (McLean) Ostil of Mr. Rein's office sent Mr. Trifon a letter confirming that the inspection had been scheduled for December 5, 2003. Timesheets submitted by plaintiff's counsel indicate that Ms. Ostil and Peter Margen, plaintiff's access consultant, did, in fact, proceed with the inspection as scheduled.

On December 31, 2003, plaintiff filed the complaint in the present action, alleging claims under the ADA and also under California law, and seeking injunctive relief and damages. In the first cause of action, plaintiff sought damages and injunctive relief under

3

California Health & Safety Code §§ 19955, et seq., and California Civil Code § 54.1, for denial of full and equal access to public accommodations. In the second cause of action, he alleged violations of the ADA (which allows only for injunctive relief).

On September 20, 2005, following a series of settlement conferences, the parties agreed to settle the claims for injunctive relief. This settlement agreement, which resulted in entry of a consent decree, specified that it "does not resolve [p]laintiff's claims for monetary damages, attorney's fees, litigation expenses and costs, which shall be the subject of further negotiation and/or litigation." The court then set deadlines for dispositive motions, and, if anything remained, for a trial on damages.

Immediately after the entry of the consent decree, defendants substituted in the law firm of Nixon, Peabody LLP. On October 7, 2005, defendants' new counsel filed a motion to compel arbitration of the damages claims, arguing that the claims related to "medical services" and were therefore subject to arbitration under Kaiser's patient agreement. On October 19, 2005, defendants' original counsel (Thelen Reid and Priest LLP) filed a notice of withdrawal of representation. The motion to compel arbitration was denied on December 16, 2005. On February 16, 2006, defendants filed a notice of substitution of counsel, substituting Seyfarth, Shaw LLP for Nixon, Peabody.

In March 2006, in anticipation of the upcoming trial, plaintiff retained the Gwilliam firm. Plaintiff filed an association of counsel on March 27, 2006. The Gwilliam firm participated in the discovery that occurred between April and July 2006.

On April 3, 2006, defendants served an offer of settlement pursuant to Federal Rule of Civil Procedure 68. Defendants served an "amended" offer on April 7, 2006, which expired on April 17, 2006; a second offer on April 18, 2006, which expired on April 28, 2006; and a final offer on April 27, 2006, which expired on May 7, 2006. In each offer, defendants proposed settling the damages portion of the case for $251,000, plus costs and attorney's fees incurred as of the time of the offer. Plaintiff did not respond to the offers.

Defendants then moved for summary judgment on the claim that Kaiser had violated

4

the state law by failing to provide plaintiff with an accessible bathroom and shower in his patient room. Plaintiff also moved for summary judgment on that claim and also moved for summary judgment on the claim that Kaiser had violated state law by failing to provide an accessible shower in the remodeled bathroom on the 4th floor maternity ward, and by failing to remove architectural barriers in parking, building entrances, and paths of travel.

On June 9, 2006, the court issued the ruling in the cross-motions for summary judgment, granting defendants' motion and denying plaintiff's motion. Plaintiff sought reconsideration of the order granting defendants' motion, and the court issued an order on July 31, 2006, denying reconsideration. The parties then participated in a further settlement conference.

On August 4, 2006, the parties agreed to settle plaintiff's claims for $150,000. The settlement agreement also provided that

> [t]he law firm of Gwilliam, Ivary, Chiosso, Cavalli & Brewer and The Law Office of Paul Rein <u>will recover</u> statutory attorney fees in an amount agreed upon at a settlement conference to be presided over by Magistrate Judge Maria Elena James, or in an amount set by the Court pursuant to a motion by plaintiff.

August 4, 2006, Settlement Agreement ¶ 7 (emphasis added). On October 24, 2006, the parties participated in a further settlement conference. They were unable to reach agreement on the issue of payment of attorney's fees and costs.

Plaintiff sought an order to show cause re contempt, for failure to comply with the consent decree, and defendants filed a motion for an order modifying the consent decree. On November 11, 2006, Magistrate Judge Joseph C. Spero conducted a hearing on the two motions. He recommended granting the motions in part and denying them in part, and the court adopted the report and recommendation on December 18, 2006. The court modified the consent decree; ordered defendants to participate in compliance hearings, every four months until all work required under the consent decree was completed; and directed the parties to submit a joint status report ten days prior to each hearing.

On November 29, 2006, plaintiff filed a motion seeking fees and costs for the work performed by the Gwilliam firm. The Gwilliam firm seeks to recover $393,957.50 in fees,

5

plus a 2.0 multiplier, or a total of $787,915.00 in fees. The Gwilliam firm also seeks to recoup $99,436.00 in costs.[1]

On May 9, 2007, plaintiff filed a motion seeking fees and costs for the work performed by the Rein firm. The Rein firm seeks to recover $873,251 in fees, plus a 2.0 multiplier, or a total of $1,746,502 in fees. The Rein firm also seeks to recoup $68,178 in costs.

Plaintiff seeks fees under the ADA, 42 U.S.C. § 12205, as well as under state law, California Civil Code § 55 and California Code of Civil Procedure § 1021.5, for work done up to the entry of the consent decree. Plaintiff also seeks fees under Civil Code § 54.3 and Code of Civil Procedure § 1021.5 for work on the damages portion of the case, and fees under the ADA and Code of Civil Procedure § 1021.5 for monitoring compliance with the consent decree.

**DISCUSSION**

A.  Legal Standards

   1.  Fees under the ADA

The ADA provides that "[i]n any action or . . . proceeding commenced pursuant to this chapter, the court . . . in its discretion, may allow the prevailing party . . . a reasonable attorney's fee, including litigation expenses, and costs . . . ." 42 U.S.C. § 12205.

   2.  Fees under California Law

Civil Code § 54.1 provides, in part, that "[individuals with disabilities shall be entitled to full and equal access . . . to accommodations, advantages, facilities, medical facilities, including hospitals, clinics, and physicians' offices . . . ." Cal. Civ. Code § 54.1(a)(1). "Full and equal access" means that "it meets the standards of Titles II and III of the Americans with Disabilities Act of 1990 . . . and federal regulations adopted pursuant thereto [unless the laws of California prescribe higher standards]." Id. § 54.1(a)(3). Any violation of the

---

[1] Plaintiff's motion indicates in addition that the Gwilliam firm seeks an additional $18,750 in fees for "anticipated future time," as well as an additional $3,150 in unexplained expenses. The court does not include these amounts in the calculation because plaintiff provides no support for this part of the request.

6

right of an individual under the ADA also constitutes a violation of Civil Code § 54.1.  Id. § 54.1(d).

Under Civil Code § 55, "[a]ny person who is aggrieved or potentially aggrieved by a violation of [§ 54.1] . . . may bring an action to enjoin the violation.  The prevailing party in the action shall be entitled to recover reasonable attorney's fees."  Cal. Civ. Code § 55.

Civil Code § 54.3 provides that any person or business that "denies or interferes with admittance to or enjoyment of the public facilities as specified" in Civil Code §§ 54 and 54.1, or "otherwise interferes with the rights of an individual with a disability" under §§ 54, 54.1, or 54.2, "is liable for each offense for the actual damages, . . . and attorney's fees as may be determined by the court in addition thereto . . . ."  Cal. Civ. Code § 54.3.

California Code of Civil Procedure § 1021.5 codifies the "private attorney general" doctrine under which attorney's fees may be awarded to successful litigants.  Punsly v. Ho, 105 Cal. App. 4th 102, 109 (2003).  This doctrine is intended to "encourage private enforcement of important public rights and to ensure aggrieved citizens have access to the judicial process where statutory or constitutional rights have been violated."  Bell v. Vista Unified School Dist., 82 Cal. App. 4th 672, 690 (2000).

Three criteria are required to support an award of attorney's fees under § 1021.5.  First, the action resulted in the enforcement of an important right affecting the public interest; second, a significant benefit was conferred on the general public or a large class of persons; and third, the necessity and financial burden of private enforcement were such as to make the award appropriate.  Abouab v. City and County of San Francisco, 141 Cal. App. 4th 643, 663 (2006).

While the public always derives some benefit when illegal private or public conduct is rectified, the Legislature did not intend to authorize an award of fees under § 1021.5 in every lawsuit enforcing a constitutional or statutory right.  The statute specifically provides for an award only when the lawsuit has conferred "a significant benefit" on "the general public or a large class of persons."  Flannery v. California Highway Patrol, 61 Cal. App. 4th 629, 635 (1998); see also DiPirro v. Bondo Corp., 153 Cal. App. 4th 150, 197-201 (2007).

7

### 3. Which Law Applies

The complaint in this action alleges jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction). In diversity cases, state rules of law governing awardability of attorney's fees are deemed "substantive" because they serve specific state policy governing litigation. Alyeska Pipeline Service Co. v. Wilderness Soc., 421 U.S. 240, 259 (1975). The factors considered in calculating the fee award are also considered "substantive" and hence governed by state law. Mangold v. Calif. Pub. Util. Comm'n, 67 F.3d 1470, 1478 (9th Cir. 1995). The Erie principles apply equally in the context of pendent jurisdiction. Id. (citing United Mine Workers v. Gibbs, 383 U.S. 715 (1966)). Thus, when, as here, a federal court has federal question jurisdiction and exercises supplemental jurisdiction over a state law claim, the court may award attorney's fees under the applicable state statute. See MRO Comm'cns, Inc. v. American Tel. & Tel. Co., 197 F.3d 1276, 1281-83 (9th Cir. 1999).

Calculating an appropriate fee award under federal law involves a two-step process. Fisher v. SJB-P.D. Inc., 214 F.3d 1115, 1119 (9th Cir. 2000). The court first calculates the "lodestar" by taking the number of hours reasonably expended on the litigation and multiplying it by a reasonable hourly rate. Id. (citing Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)). The court may then adjust the lodestar upward or downward based on an evaluation of the factors articulated in Kerr v. Screen Extras Guild, Inc., 526 F.2d 67 (9th Cir. 1975), which have not been subsumed in the lodestar calculation. Id.

The factors the Ninth Circuit articulated in Kerr are (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill required to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. Kerr, 526 F.2d at 70.

The factors considered to be subsumed in the initial lodestar calculation include the novelty and complexity of the issues, the special skill and experience of counsel, the quality of the representation, and the result obtained. See Morales v. City of San Rafael, 96 F.3d 359, 363-64 & n.9 (9th Cir. 1996). Risk or contingency multipliers are not available under federal law. City of Burlington v. Dague, 505 U.S. 557, 567 (1992) ("enhancement for contingency is not permitted under the fee-shifting statutes").

A similar standard is applied under California law. The determination of what constitutes a "reasonable fee" begins with the lodestar – the number of hours reasonably expended multiplied by a reasonable hourly rate. PLCM Group, Inc. v. Drexler, 22 Cal. 4th 1084, 1095 (2000). The lodestar is considered the basic fee for comparable services in the legal community, and it may be adjusted by the court based on several factors including the novelty and difficulty of the questions involved, the skill displayed in presenting them, the extent to which the nature of the litigation prevented other employment by the attorneys, and the contingent nature of the fee award. Ketchum v. Moses, 24 Cal. 4th 1122, 1132 (2001).

> The purpose of such adjustment is to fix a fee at the fair market value for the particular action. In effect, the court determines, retrospectively, whether the litigation involved a contingent risk or required extraordinary legal skill justifying augmentation of the unadorned lodestar in order to approximate the fair market value for such services.

Id. (citing Serano v. Priest, 20 Cal. 3d 25, 49 (1977)).

Thus, unlike federal law, California law allows contingency multipliers. Id. To determine the propriety of applying a multiplier, the court must consider several factors, including the novelty or difficulty of the questions involved; the expertise and capability of counsel; the results obtained; the contingent risk involved in the case; the extent to which the nature of the litigation precluded other employment by the attorneys; and whether the attorneys received public and/or charitable funding. Serano, 20 Cal. 3d at 48-49.

B.   Plaintiff's Motions

Plaintiff argues that he is entitled to fees and costs as the prevailing party, under both federal and state law. He asserts that he is the prevailing party based on the

injunctive relief obtained, and also based on defendants' subsequent agreement to pay damages of $150,000 – more than twice the amount of the damages obtained in Hankins v. El Torito Restaurants, Inc., 63 Cal. App. 4th 510 (1998), which plaintiff claims is one of the largest reported disabled access trial damage awards.  In addition, plaintiff contends that his attorneys are entitled to a "public interest multiplier" per California Code of Civil Procedure § 1021.5 for all work done toward obtaining the injunctive relief and protecting the injunctive relief by compliance actions.

The Rein firm seeks $873,251 in fees, plus a 2.0 multiplier, and $68,378 in costs. The fees are calculated based on an hourly billing rate of $435 for Paul Rein, $400 for Patricia Barbossa, $275 for Julie (McLean) Ostil, $125 for Scott Holmes (paralegal), and $100 for Aaron Clefton (paralegal).

The motion attaches timesheets for all attorneys and paralegals, showing the tasks performed, and the date and time required for each task.  Plaintiff asserts that the hourly rates claimed by the attorneys in the Rein firm are reasonable based on their education, demonstrated skills, and specialized experience, and supports this argument with resumes of Mr. Rein, Ms. Barbossa, and Ms. Ostil (formerly Ms. McLean).  Plaintiff also includes declarations from three attorneys from the Northern California area, testifying to comparable rates in the community.  These attorneys all have extensive experience litigating disability access and discrimination cases, and are also familiar with the work of the Rein firm.

The Gwilliam firm seeks $393,957.50 in fees plus a 2.0 multiplier, and $99,436 in costs.  The fees are based on an hourly billing rate of $650 for J. Gary Gwilliam, $225 for Kerri Jaffe, and $67.75 for Marilyn Cartwright (paralegal).  The moving papers include no declarations substantiating the fees requested or the asserted out-of-pocket expenses.

Plaintiff provides a declaration from Mr. Gwilliam setting forth a short break-down of the hours into general categories of work performed – e.g., "meetings and phone calls," "attending hearings," and "drafting pleadings" – as well as a "summary of the expenses," but no detailed summary of the tasks performed and hours required.  Thus, from the

moving papers it is impossible to tell, for example, the extent to which duplicative or unnecessary work may have been performed, or the extent to which Mr. Gwilliam may be billing for work that should have been performed by an associate or a legal assistant.

Plaintiff also provides a generic declaration from attorney Richard M. Pearl, author of California Attorney Fee Awards. In addition to providing a copy of his CV, Mr. Pearl includes 30 pages summarizing the 2001-2006 billing rates at more than 25 San Francisco-area law firms, including some of the largest firms, plus a listing of 14 cases, mostly from state court, and a summary of the billing rates approved in those cases. Mr. Pearl asserts, based on his "knowledge of market rates" and his "knowledge of the skill, experience, and reputation of Mr. Gwilliam, who is widely known as one of the foremost trial attorneys in the State, if not the country," that the rates charged by Mr. Gwilliam and Ms. Jaffe are "in line with the hourly rates charged by attorneys of equivalent experience, skill, and expertise for comparable work,"

Defendants do not pose any specific objections to the billing rates. The court must determine a reasonable hourly rate by considering the experience, skill and reputation of the attorneys requesting fees. See Schwarz v. Secretary of Health and Human Servs., 73 F.3d 895, 906 (9th Cir. 1995). "A district court should calculate this reasonable hourly rate according to the prevailing market rates in the relevant community, which typically is the community in which the district court sits." Id.

The court finds, based on the declarations filed with the fee motions, that the rates requested by the Rein firm are arguably at the level charged in the community. With regard to the Gwilliam firm's rates, the court finds Ms. Jaffe's rate to be within the rates charged in the community, but finds that plaintiff has provided inadequate support for Mr. Gwilliam's requested rate of $650 an hour. Unlike the declarations provided in support of the Rein firm's request, the Pearl Declaration does not address the question of rates charged by small firms that handle disability access and discrimination cases. Accordingly, the court finds that Mr. Gwilliam's rate should be set at the same level as Mr. Rein's – $435 an hour.

With regard to the number of hours for which plaintiff's counsel seek compensation,

defendants do not argue that any <u>specific</u> hours claimed by either firm are excessive or duplicative. They argue only that plaintiff's counsel billed more hours than defendants' counsel did during the period that preceded defendants' Rule 68 offer, which is a meaningless comparison.

It is the burden of the party opposing the request to submit specific objections to the hours expended. <u>Gates v. Deukmejian</u>, 987 F.2d 1392, 1404 (9th Cir. 1992). To the extent that defendants may be arguing that more than one attorney performed the same work and that the fees should be reduced on that basis, they have not met their burden of submitting specific objections or pointing to the evidence of record which might support such a conclusion. Conclusory and unsubstantiated objections are not sufficient to warrant a reduction in fees. <u>Jones v. Wild Oats Markets, Inc.</u>, 467 F.Supp. 2d 1004, 1016 (S.D. Cal., 2006).

Defendants' object only to the request for fees for work performed after the Rule 68 offer and work performed on compliance enforcement, and to the request for a multiplier. Thus, the court finds that the motion should be GRANTED as to the work performed prior to April 27, 2006, the date of defendants' final Rule 68 offer. The Rein firm shall be awarded the sum of $469,989.50 in attorney's fees for the work performed up to and including April 27, 2006.[2] The Gwilliam firm shall be awarded the sum of $43,682.85 for work performed from March 27, 2006, the date the association of counsel was filed, to April 27, 2006.[3]

With regard to post-offer work, defendants argue that plaintiff should recover nothing, because the amount of the offer exceeded the amount for which he ultimately agreed to settle. In the alternative, defendants assert that the lodestar should be reduced because plaintiff achieved only limited success.

---

[2] This figure is based on defendants' calculation (which plaintiff does not oppose) of $368,401.50 for attorney work performed up to the service of the Rule 68 offer on April 3, 2006; plus the court's calculation (based on the timesheets submitted with the Rein firm's moving papers) of $94,250 for attorney work performed from April 3, 2006, to April 27, 2006, and $7,338 for paralegal work for the period up to April 27, 2006.

[3] This figure is based on the court's calculation, from the timesheets submitted with the Gwilliam firm's reply to the opposition.

12

Under Rule 68, if the defendant serves an offer of settlement, and the plaintiff turns down the defendant's offer of settlement and obtains a judgment for less than the offer, the plaintiff must pay "the costs incurred after the making of the offer." Id. This includes judgments obtained through summary judgment, Liberty Mut. Ins. Co. v. E.E.O.P., 691 F.2d 438, 442 (9th Cir. 1982), and also includes orders terminating litigation as a result of settlement, Lang v. Gates, 36 F.3d 73, 76 (9th Cir. 1994).

The offer must be in writing and must specify a definite sum. Schwarzer, Tashima & Wagstaffe, Federal Civil Procedure Before Trial (2007) §§ 15:152-153. To be effective, the offer must also include an agreement to pay costs incurred to the date of the offer. The language used must be clear enough that the parties and the court understand that such costs are included. Id. § 15:154; Holland v. Roeser, 37 F.3d 501, 504 (9th Cir. 1994). The "costs" referred to are the costs awardable under relevant federal statutes, such as 28 U.S.C. § 1920. See United States v. Trident Seafoods Corp., 92 F.3d 855, 860 (9th Cir. 1996).

An award of costs also includes statutory attorney's fees where the statute authorizes their recovery as part of "costs." Marek v. Chesney, 473 U.S. 1, 9 (1985); see also Schwarzer, et al., § 15:167. When a federal district court has federal question jurisdiction and exercises supplemental jurisdiction over a state law claim, the district court may award attorney's fees under the applicable state statute. MRO Comm'cns, 197 F.3d at 1281-83.

Thus, the court must look to whether attorney's fees are recoverable as "costs" under the applicable state statute. Id. at 1281-82; see also Bevard v. Farmers Ins. Exchange, 127 F.3d 1147, 1148 (9th Cir. 1997). Under California law, "costs" recoverable by a prevailing party include attorney's fees authorized by statute or contract. Cal. Civ. P. Code § 1033.5(a)(10).

Here, defendants argue that plaintiff is not entitled to recover any fees or costs for work done after the Rule 68 offer. They contend that because the Rule 68 offer clearly and unambiguously included attorney's fees and costs incurred as of the date of the offer as

13

part of the offer of settlement, defendants may avail themselves of the benefits of Rule 68. They assert that it was unreasonable for plaintiff to continue litigating the case after the consent decree had been negotiated and after defendants had made their Rule 68 offer, and that the work performed post-offer did not benefit plaintiff in the slightest.

The court finds that Rule 68 does not operate in this case to bar plaintiff from recovering costs (including fees, under California law) incurred post-offer because the parties' subsequent settlement agreement provided that plaintiff's counsel "will recover statutory attorney fees . . . in an amount set by the Court pursuant to a motion by plaintiff."

The ordinary rules of contract construction apply to interpreting the terms of a Rule 68 settlement offer. Guerrero v. Cummings, 70 F.3d 1111, 1113 (9th Cir. 1995). While plaintiff's failure to accept defendants' Rule 68 offer to settle the case for $251,000 plus costs and attorney's fees incurred as of the date of the offer, and subsequent agreement to settle the case for $150,000, would ordinarily have meant that plaintiff could not recover any costs incurred in the post-offer period, the parties later entered into an agreement that plaintiff would receive $150,000 plus statutory fees.

Where a plaintiff is waiving his/her right to statutory attorney's fees, that waiver must be clear and unambiguous. Nusom v. Woodburn, 122 F.3d 803, 833 (9th Cir. 1997). Here, while plaintiff seemed to be waiving his right to fees by rejecting a Rule 68 offer that later turned out to be for a larger amount than the final judgment amount, the subsequent settlement agreement renders that waiver ambiguous, and therefore not enforceable.

Nevertheless, the Ninth Circuit has suggested that even where the plaintiff's rejection of a Rule 68 offer does not result in a shifting of costs, the offer may nonetheless prove useful in the court's determination of the reasonableness of the post-offer attorney's fees incurred. In Haworth v. State of Nevada, 56 F.3d 1048 (9th Cir. 1995), the plaintiffs sued under the Fair Labor Standards Act, seeking back wages. After a bench trial, the district court entered judgment for plaintiffs on one claim. The amount of the judgment was approximately $240,000 less than the defendant's pretrial Rule 68 offer. The district court rejected the defendant's argument that in an FLSA case, a Rule 68 offer cuts off any

14

entitlement to attorney fees and costs incurred thereafter by a plaintiff who obtains a judgment for less than the settlement offer. The court awarded plaintiffs their costs of suit and $85,975 in attorney's fees.

The Ninth Circuit noted that the FSLA defines attorney's fees separately from costs. Id. at 1051-52. Thus, the court found, unlike the fees in an action under 42 U.S.C. § 1983, which are considered part of "costs," fees in an FLSA action are not automatically shifted by Rule 68. Id. However, while the court ruled that Rule 68 did not bar the plaintiffs from recovering reasonable attorney's fees in their FSLA suit after the Rule 68 offer had been made, the court did hold that the Rule 68 offer must be considered in determining whether the amount of the fee sought is reasonable. Id. at 1052.

The court concluded that in determining a reasonable fee award in such a case, the court should consider the amount of the Rule 68 offer, the stage of the litigation at which the offer was made, what services were rendered thereafter, the amount obtained by the judgment, and whether it was reasonable to continue litigating the case after the Rule 68 offer was made. Id. at 1052-53. The court warned that "clients who refuse a Rule 68 offer should know that the refusal to settle the case may have a substantial adverse impact on the amount of attorney's fees they may recover for services rendered after a settlement offer is rejected." Id. at 1052.

Under the reasoning articulated in Haworth, the court finds that plaintiff should not recover the full amount of the fees requested for the work performed post-offer. At the time defendants extended the Rule 68 offer for $251,000 plus costs and attorney's fees, plaintiff had incurred approximately $368,000 in fees, and some undetermined amount of costs, for work performed by the Rein firm, and less than $50,000 in fees and $12,000 in costs, for work performed by the Gwilliam firm. The case had been pending for almost two and a half years, plaintiff had obtained all the injunctive relief he sought, all that remained in the case was plaintiff's claim for damages, and the trial was set to commence on August 7, 2006, a little over three months away. As plaintiff asserted in his motion, damages awarded following trials in disabled access cases had not previously exceeded $80,000. Under

15

those circumstances, the court finds that it was not reasonable for plaintiff to reject defendants' Rule 68 offer.

The court finds further that a reduction in the fees is warranted based on plaintiff's lack of success in the post-offer portion of the case. When considering whether to award attorney's fees, the court  the court should consider various factors in deciding "reasonableness." The most critical factor in determining the amount of fees awarded is the degree of success obtained, and the court may reduce the amount to account for limited success. See Hensley v. Eckerhart, 461 U.S. 424, 436-37 (1983); Computer Xpress v. Jackson, 93 Cal. App. 4th 993, 1019 (2001).

Here, plaintiff's success was limited. As defendants point out, in the course of litigating the damages portion of the case, plaintiff's counsel spent virtually all their time and resources on issues relating to the toilet and shower access – issues dismissed by the court on summary judgment. The failed claims were not sufficiently related to the remaining claims (the Hoyer lift sling and the door handles) such that the total amount of the fees plaintiff seeks on the failed claims should be recoverable. In addition, the sling issue was a minor one, as it lasted only one day and resulted in no significant injury to plaintiff, and the door handles issue was essentially moot, as plaintiff was too disabled at the time to use door handles.

In particular, the Gwilliam firm achieved little for plaintiff, as it had no involvement in the access issues that were central to plaintiff's case. Indeed, the Gwilliam firm apparently has little experience litigating ADA Title III access cases, and was brought into the case for the purpose of litigating the emotional distress issues, and Mr. Gwilliam himself acknowledged at the hearing on the cross-motions for summary judgment that he has little familiarity with federal court procedures.

Moreover, the correspondence establishes that Kaiser was proactively negotiating a resolution to plaintiff's complaints in 2003, and that plaintiff, without any warning, filed the present action. Timesheets submitted by plaintiff's counsel indicate that at the same time that the Rein firm was representing to Kaiser that it wanted to resolve the issues without

16

filing a lawsuit, and would in fact hold off on litigation if Kaiser agreed to a "cooperative inspection" of Room 605, the Rein firm was in fact preparing to file a lawsuit.

The court is not persuaded, however, by defendants' argument that plaintiff is not entitled to recover fees incurred in seeking to enforce the consent decree. Code of Civil Procedure § 1021.5 authorizes the court to award fees to a successful party in an action that has resulted in the enforcement of an important right affecting the public interest if three conditions exist – a "significant benefit" has been conferred on the general public or a large class of persons; the necessity and financial burden of private enforcement are such as to make the award appropriate; and such fees should not be paid out of the recovery, if any. Cal. Civ. P. Code § 1021.5.

A plaintiff confers a significant benefit on the general public when he/she continues with efforts to obtain the defendant's compliance with a stipulated injunction. A party "may be considered a successful party within the meaning of section 1021.5 if that party's efforts had the effect of ensuring compliance with the trial court's prior order." Vasquez v. State of California, 154 Cal. App. 4th 406, 419 (2007) (quoting Nat'l Parks & Conservation Ass'n v. County of Riverside, 81 Cal. App. 4th 234, 242 (2000)).

Here, plaintiff's efforts have resulted in ensuring Kaiser's compliance with the consent decree, and that work has all occurred post-offer. Thus, plaintiff is entitled to fees for the consent decree compliance work.

Based on the foregoing considerations, the court finds that the request for fees incurred post-offer should be reduced by 50%. Thus, the Rein firm will be awarded $201,630.75 for the work performed after April 27, 2006, and the Gwilliam firm will be awarded $124,021.90 for work performed after April 27, 2006.[4]

In addition, the court finds that plaintiff's counsel are not entitled to a "public interest" or "risk" multiplier. Contingency risk is used as a basis for a multiplier in order to

---

[4] The court calculated these figures by subtracting the amount requested for pre-offer work from the total amount requested, and dividing the result in half. The court also calculated Mr. Gwilliam's hours, multiplied those hours by $435, and subtracted that amount from the amount requested for Mr. Gwlllliam's post-offer work.

17

"compensate for the risk of loss generally in contingency cases as a class." Beasley v. Wells Fargo Bank, 235 Cal. App. 3d 1407, 1419 (1991). Plaintiff asserts that this case is appropriate for a multiplier, because his counsel obtained "extraordinary results" at "great personal risk" – investing thousands of hours of attorney time and advancing substantial amounts in litigation expenses and costs.

In the court's view, however, plaintiff did not achieve exceptional results, such that a multiplier is warranted. Plaintiff's counsel did not file this lawsuit at "great personal risk," any more than any other case under the ADA. Indeed, in this case, defendants advised plaintiff's counsel that they were engaged in the process of resolving the access violations, and he indicated he would not sue if they cooperated with him. Nevertheless, he filed suit.

Finally, with regard to payment of costs, plaintiff contends that his out-of-pocket expenses are reasonable because they are litigation expenses of the type normally billed to a fee-paying client, such as expert witness fees and travel expenses, as authorized under the ADA and Code of Civil Procedure § 1021.5.

As for the costs incurred by the Rein firm, it is difficult to determine which costs were incurred pre-offer and which were incurred post-offer. The Rein motion includes a total amount of costs, broken down into categories, but the supporting documentation (receipts, invoices, and so forth) is not organized chronologically or by category.

The Gwilliam firm's motion included no supporting documentation of the fees and costs with the moving papers. In response to defendants' opposition, plaintiff asserted that the Gwilliam firm's failure to provide such documentation was "based on the local rules, which provide that counsel is not to provide such evidence, unless requested by the [c]ourt."[5] Plaintiff suggested that the summary of hours and expenses set forth in the opening papers should be sufficient. However, "in an effort to alleviate [d]efendants'

---

[5] In fact, Civil Local Rule 54-6 requires that "[u]nless otherwise ordered, the motion for attorney fees <u>must be supported by declarations or affidavits</u> containing" a statement of services rendered by each person for whose services fees are requested, a summary of time spent by each such person, a description of his/her qualifications and experience, and a statement of the customary hourly charges of each such person or of comparable prevailing hourly rates. Civ. L.R. 54-6(b) (emphasis added).

18

concerns over counsel's timesheets," plaintiff submitted, with the Gwilliam reply, the timesheets and an itemized list of costs "for review by the court."

The court finds that the requested costs should be reduced 50%, for several reasons. First, as noted above, the documentation is inadequate. Second, plaintiff seeks compensation for costs for experts whose testimony was in large part excluded by the court. Third, a significant portion of the costs were incurred in connection with work on claims that were ultimately dismissed. Accordingly, the court finds that the Rein firm shall recoup $34,189 in costs, and the Gwilliam firm shall recoup $49,718 in costs.

## CONCLUSION

In accordance with the foregoing, the court GRANTS plaintiff's motions in part and DENIES them in part. Plaintiff is hereby awarded a total of $839,325 in attorney's fees – $671,620.25 for work performed by the Rein firm, and $167,704.75 for work performed by the Gwilliam firm – and a total of $83,907 in costs.

**IT IS SO ORDERED.**

Dated: September 28, 2007

_____
PHYLLIS J. HAMILTON
United States District Judge